No. 20,118.

In re the Contempt of JOHN F. HANSON.

(5 P. 2d 1088.)

November 11, 1916.   Opinion filed December 12, 1931.

*Roland Boynton,* attorney-general, *Everett E. Steerman* and *Dunkin Kimble,* assistant attorneys-general, for the state.

*John F. Hanson,* of Lindsborg, *pro se.*

The opinion of the court was delivered by

HUTCHISON, J.:   This is a motion to vacate, annul and set aside the judgment and order of this court rendered November 11, 1916, wherein John F. Hanson was found guilty of contempt of this court and was suspended from practice as an attorney at law in any and all of the courts of this state until the further order of this court, for the reason that said order is wholly void and because the court was without jurisdiction or power to render such order.

The first reason assigned is because the order of suspension was made in a contempt proceeding and the respondent had no intimation that any suspension was intended or involved until the ruling was handed down, and he cites *Peyton's Appeal,* 12 Kan. 398, as strictly applicable, where it was said:

"We do not think that the appellant had sufficient notice that this proceeding was instituted for the purpose of disbarring him.   The whole proceeding, as it appears from the record brought to this court, would seem to be merely a proceeding for contempt." (p. 408.)

That was an action for contempt and deceit where the respondent had been admitted to the bar in Kansas on a forged certificate from the state of Indiana.   It nowhere referred to his professional conduct or behavior.

The contention of the respondent in this case is not borne out by the record.   The accusation was signed and filed by the attorney-

general of the state, designated by R. S. 7-112 to conduct disbarment proceedings. The accusation contains the following allegations:

". . . that the said John F. Hanson is an attorney at law duly admitted to practice in the district courts and in the supreme court of the state of Kansas, and, as such, is an officer of said supreme court; that the said John F. Hanson, while acting as said attorney and in disregard of his duties and obligations as such attorney, in said petition for rehearing made various and divers attacks and reflections upon the supreme court, and willfully, in said petition for rehearing, used toward said court contemptuous and insulting language; that said language is contained and found in various portions of said petition for rehearing; . . .

"That the attention of the said John F. Hanson has been directed to the use of such language and to his conduct toward this court, and the court has admonished the said John F. Hanson against the use of contemptuous language, and in the opinion of the court, filed in the case of the *State v. Linderholm,* 95 Kan. 670, the attention of the said John F. Hanson was particularly directed to the use of such language in the following words of the court:

" ' . . . the writer finds in the pleadings, correspondence and documents of counsel a persistent insolence and effrontery towards this court and the individual justices which are wholly inexcusable and which must not be repeated.' "

The Linderholm case, in which the warning quotation was given, was decided and the warning given this respondent on June 12, 1915, and the objectionable petition for rehearing in this case was filed by him March 4, 1916, about nine months thereafter. The following quotations from the answer show that the respondent plainly understood that his professional conduct was involved:

". . . that he admits that he is an attorney at law duly admitted to practice in all the courts of Kansas, that he was an attorney for said relatrix in said cause . . .

"But he specifically denies that he disregarded his duties and obligations while acting as such attorney, but on the contrary exerted his utmost efforts in behalf of his client's cause . . .

"The said John F. Hanson further answering alleges and says that the unusual and vehement language used in the said petition for rehearing is made necessary by what seems to be a persistent practice of the court of going to extremes adverse to him in their rulings and position in causes before them in which he is counsel or party . . . "

Another paragraph of the answer undertakes to excuse and justify his use of such unusual and vehement language, as admitted to have been used by him in the petition for rehearing, because of his unfair treatment by the court in rulings in this and other cases mentioned by him and because of his constitutional and legal rights as an attorney and for the want of other adequate remedy for the purpose of

getting better and closer attention to the matters under consideration.

Respondent refers to the decision in the case of *State v. Root*, 5 N. D. 487, where the order of disbarment was reversed because it was rendered in an action where the attorney was tried for contempt and because he was not at his urgent request permitted to demur to the accusation and make other defenses allowed under the disbarment procedure in contempt cases. That was very different from this case in that the respondent here raised all kinds of legal questions, jurisdictional, constitutional rights, due process and rights under the fourteenth amendment to the federal constitution.

*Ex Parte Bradley*, 74 U. S. 364, was where the contempt was committed, if at all, before one of the judges while acting in a different court than that hearing the contempt matter, and in this case, like the South Dakota case above cited, no opportunity for defense was afforded the respondent as to a disbarment matter.

Another case cited by respondent is *Withers v. The State, ex rel. Posey*, 36 Ala. 252, and it is a mandamus action to compel the mayor of a city who sits as a court to recognize an attorney whom he refused to recognize because of some past conduct not before him and for which he had never had a hearing of any kind before any court.

With the issues as outlined above, formed by the answer to the accusation, there was a complete trial. The language of the petition for rehearing was admitted and in addition to the many legal points raised by the answer there was the defense of justification and excuse for the unusual language, all of which points were fully considered in the opinion.

The next reason assigned by respondent is because suspension could not be made in a contempt proceeding nor joined with it. Respondent relies strongly upon the ruling in favor of his contention in the Root case, *supra*, where the statutory procedure for the trial of contempt actions is so different from that in disbarment actions, as above indicated, where the former must be in the form of answers to interrogatories, and for this reason it was held that the two matters could not be heard together in the same action. No such distinction in procedure exists in this state.

Strong reliance is placed upon the ruling in *State v. Fisher*, 103 Neb. 736, in effect overruling an earlier decision of that court rendered by a divided court, but the most that was determined in the

case in this particular was that contempt and disbarment are distinct prosecutions and that they "are not usually joined in one complaint." (p. 743.) There the attorney was objecting to his being tried for an offense, which apparently amounted to a contempt, until he had been found guilty of the contempt.

One of the cases on which respondent relies under this second proposition is *Adams v. Gardner, Judge,* 176 Ky. 252, and there it was held suspension could not be imposed in a contempt case because it was not one of the two specific and definite punishments prescribed by statute, which punishments were $30 fine and imprisonment for thirty hours (Ky. Stat. § 1291). No such limitation as to kind or extent of punishment for contempt exists in Kansas. (R. S. 20-1203 to 20-1206.)

*In re Adriaans,* 17 App. D. C. 39, cited by respondent, is a case where an attorney in the District of Columbia set out libelous matter in a motion in arrest of judgment on a conviction in a police court for malicious trespass. The ruling thereon was appealed through all the courts to the United States supreme court, also a mandamus action was had in the same connection, and finally this action in disbarment which reviews these earlier proceedings and observes the distinction in procedure, but renders judgment disbarring the attorney in the case properly brought finally for that purpose.

Another reason assigned why the judgment of suspension is void is because it is indefinite, being until the further order of the court. R. S. 7-115 provides:

"If the court find the accused guilty of the charges made against him, then the judgment of the court may be, according to the gravity of the offense charged, deprivation of the right to practice as an attorney at law in all the courts of this state either permanently or for a limited period; and in such event the court shall order that the name of the accused be stricken from the roll of attorneys."

The next succeeding section, R. S. 7-116, places the operation or continuance of such judgment largely in the discretion of the court.

Respondent cites decisions from some states which hold no judgments should be indefinite and in a few cases applicable to suspension from the bar, to the same effect, that such judgments should not be indefinite. On this subject, however, there is a division of authorities. The following cases approve indefinite sentences of suspension: *In re Brown,* 3 Wyo. 121; *In re Philbrook,* 105 Cal.

471; and *In re Dunn*, 85 Neb. 606. We think, however, that the language of the statute controls the matter, as it undoubtedly did in some of the cases where the conclusion reached was different. R. S. 7-115 provides that the deprivation of the right to practice as an attorney at law may be either permanent or for a limited period and that in such event the name of the accused shall be stricken from the roll of attorneys. The court in this case would have had the right under the same accusation to have made this permanent instead of "until the further order of the court," and in either event the name is stricken from the roll of attorneys.

In one of the cases cited it was said it was a kindness to the accused to make the order indefinite as to time so as to modify or release it and reinstate the accused at an earlier date than the statute in the next section provides, namely, after two years. The only difference between complete disbarment and suspension is the inherent contemplation of time. The purpose of disbarment, which this might have been, under the same proceedings, would be permanent and still not without the right of reinstatement, and the purpose of suspension instead of disbarment carries the idea of temporary dropping from the roll instead of permanent.

The next reason assigned for the suspension being void is that a contempt is not punishable by suspension but only by fine or imprisonment, and the authorities cited by the respondent which support that view are, as far as we have been able to observe, based upon the usual and ordinary punishment in most states prescribed for contempt, namely, a fine or imprisonment, and respondent urges the necessity of following that rule in Kansas, whereas there is no such limitation for punishment for contempt in this state, as indicated above when R. S. 20-1203 to 20-1206 was cited.

Two other reasons given against the judgment of suspension are: that the court had no power to suspend from other courts, and that the statute is the only reasonable regulation—inherent power not involved.

The first reason is answered by the statute itself, which places in the supreme court not only the matter of admission to the bar, but also the matter of disbarment and suspension, as shown by R. S. 7-111.

"It is well settled that a court authorized to admit an attorney has inherent jurisdiction to suspend or disbar him for sufficient cause, and that such juris-

diction does not necessarily depend on any express constitutional provision or statutory enactment." (6 C. J. 580.)

As to the second reason, we understand respondent does not intend thereby to question the fact that the court has an inherent power to punish for contempt, but that such power is not here involved because the statutory regulation is sufficient for the purpose, citing the holding in *In re Smith*, 73 Kan. 743, 85 Pac. 584, as expressing his contention as to limitation on the general power as follows:

"It is generally held that the enumeration of the grounds for disbarment in the statute is not to be taken as a limitation on the general power of the court, but that attorneys may be removed for common-law causes when the exercise of the privileges and functions of their high office is inimical to the due administration of justice." (p. 748.)

That view of the question of inherent power and statutory regulations gives the court the statutory regulation for all purposes, and for extreme or unusual cases the inherent power, that is, a distinction depending upon the nature and extent of the offense or professional misconduct and therefore not a matter which could make the judgment void because if it did not come exactly within the statutory provisions, then the inherent power would apply.

It is urged, not only in one but in many of these reasons set out and insisted upon by the respondent, that the deprivation of the right to practice law as an attorney is the taking of property without due process of law and that this is a property right which one already admitted to the bar possesses. The opinion of this court on that subject has recently been fully and definitely expressed in *In re Casebier*, 129 Kan. 853, 284 Pac. 611. This holding is in line with the general views on this subject as stated in the texts and decisions.

"An attorney does not hold an office or public trust, in the constitutional or statutory sense of that term, but is an officer of the court, exercising a privilege or franchise. He is, however, in a sense an officer of the state, with an obligation to the public no less significant than his obligation to his clients." (6 C. J. 568.)

The other three of the nine reasons assigned by the respondent to show that the judgment of suspension was void were: that this was not such a contempt, if contempt at all, that it would warrant suspension; the fact that contemptuous intent being denied ends the entire proceedings; and that the language in question was not con-

temptuous and it was within the rights of advocacy. None of these affect the validity of the judgment. They refer to the facts in the case and the extent of the misbehavior, which would not determine in the least the question of the judgment being valid or otherwise. A mistaken conclusion as to the seriousness of the conduct would not make the judgment void or invalid if the court had jurisdiction to render a judgment of this kind, and under such circumstances the fact that it may have reached a conclusion that the words spoken were more objectionable than they really were, or than others would have concluded them to have been, will not render the judgment void.

We here have the offensive language in the petition for rehearing admitted to have been unusual and vehement, but claimed to have been justifiable and excusable, written and filed within less than a year after a definite and specific warning had been given to this respondent that such objectionable language must not be repeated. Even in the brief of the respondent filed in this court on September 14, 1931, in support of his motion to set aside the judgment of suspension, he no less than twelve times uses language which no self-respecting attorney should ever place in any paper to be filed in any court and such as would have justified the striking of the entire brief from the files.

The motion to vacate, annul and set aside as void the judgment of suspension rendered in this case on November 11, 1916, and reported in 99 Kan. 23, 160 Pac. 1141, is overruled.