No. 38,810

THE STATE OF KANSAS, on the relation of Harold R. Fatzer, the Attorney General, *Plaintiff*, v. D. W. SCHMITT, individually, and D. W. SCHMITT, Manager, "National Pure Trust Service, Rocky Mountain Division," and NATIONAL PURE TRUST SERVICE, organizational status unknown, *Defendants*.

(258 P. 2d 228)

Opinion filed June 6, 1953.

*C. W. Hughes,* special assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, *C. H. Hobart,* assistant attorney general, and *George Siefkin,* of Wichita, were with him on the briefs for the plaintiff.

*Wm. H. Burnett,* of Hutchinson, argued the cause, and *Robert L. McDougal,* of Denver, Colorado, was with him on the briefs for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original action in the nature of quo warranto commenced by the State on the relation of the Attorney General against D. W. Schmitt, individually, D. W. Schmitt, Manager, "National Pure Trust Service, Rocky Mountain Division," and National Pure Trust Service, organizational status unknown, to determine if the defendants have been exercising the privilege and franchise of practicing the learned profession of the law, and if so to oust and enjoin them therefrom.

The substance of the pleadings filed is as follows: In the petition it is alleged that the action is brought by the State on the relation of the attorney general and at the request of the committee on Illegal Practice of the Law of the Bar Association of the State of Kansas; that Schmitt is not now and never has been admitted to practice law in Kansas; that "D. W. Schmitt, Manager," is an individual, a resident of Denver, Colorado, doing business under the name and style of "National Pure Trust Service, Rocky Mountain Division," and Schmitt, manager, doing business as aforesaid is not now and never has been admitted to practice law in the State of Kansas. For reasons hereafter stated we do not review allegations as to defendant "National Pure Trust Service"; that all named defendants are now and for some two years past have been unlawfully exercising or attempting to exercise the franchise and privilege of practicing law in stated cities within the State of Kansas without having complied with and in violation of the statutes and of the rules of this court; that the defendants and without having license to practice law from this court hold and have held themselves out as being ready, willing and able to pass upon the creation of trusts and trust documents, to create such trusts or cause such trusts to be created as would be legal in all respects and save the trustor the necessity of making a will as well as the expense incident to the probating thereof, to relieve the trustor from transfer taxes, as well as placing him in a more advantageous position in the distribution of profits to his family with subsequent reduction in the taxes which the trustor would otherwise have to pay upon income, and otherwise hold themselves ready, willing and able to practice law within the State of Kansas; that the defendants, without being licensed to practice law within this state, have advised with and created or caused to be created, trust indentures and purported trust indentures with named

individuals at given addresses within this state, and have furnished and supplied to them and others who have employed defendants, the legal documents claimed by defendants to be necessary in the creation of such trusts and have advised such persons as to the tax consequences thereof, and agreed to furnish needed legal services during the continued existence of such trusts. The nature of the prayer has been indicated above.

Summons was issued out of this court and the return shows service on "D. W. Schmitt individually and D. W. Schmitt, Manager National Pure Trust Service, Rocky Mountain Division." No service was had on defendant "National Pure Trust Service, organizational status unknown."

D. W. Schmitt as an individual and D. W. Schmitt, Manager, National Trust Service, Rocky Mountain Division, filed an answer, denying that Schmitt has ever undertaken to practice the learned profession of the law within the State of Kansas; that he ever held himself out to be a lawyer or had attempted to exercise the franchise and privilege of an attorney at law or that he had been unlawfully practicing law at the places named in the petition; that he had ever created or caused to be created any of the trusts charged or that he agreed to furnish any legal services needed during the continuance of any such trust, or that he made any misleading or erroneous statements which would subject donors and beneficiaries to serious difficulties, litigation and tax liabilities beyond their conception and understanding at the time of the creation of the trusts. It was further pleaded at length that Schmitt is a salesman for National Pure Trust Service of Chicago, Illinois; that he is not admitted to the Bar of the State of Kansas or any other state; that he has not assumed to give advice on legal subjects; that he has sold many copyrighted "Trust Indenture Forms" for the National Pure Trust Service of Chicago and has come in contact with many lawyers who had not made a study of pure trusts and had no experience with irrevocable trusts and who requested Schmitt to furnish them with information and that he had done so; that for the National Pure Trust Service of Chicago he had sold to the persons named in the petition a Trust Indenture form which could be used for the creation of a pure trust; that he did not supervise the execution thereof nor the transfer of property to any trust nor prepare any legal papers in connection therewith; that Schmitt is not an officer, agent or representative of National Pure Trust Serv-

ice 'of Chicago and acts only in the capacity of a salesman, taking orders in the field, forwarding to that Service the remittance of the purchaser and being paid a commission for his services from the Chicago office. The prayer of the answer was that plaintiff's petition be denied.

After the issues had been joined, this court appointed James D. Dye, an attorney at law in this court, as a commissioner to hear the evidence and to make suggested findings of fact and conclusions of law and report to the court. Before any testimony was taken the defendant Schmitt individually filed his motion that the action be dismissed for the reasons in substance that no member of the committee on Illegal Practice of the Law of the Bar Association of the State of Kansas had made any investigation of charges against Schmitt, no complaint in writing had been made, and other similar allegations. Although both of these motions were presented to our commissioner, they ultimately came before this court for ruling and were denied.

Pursuant to our order the commissioner heard the evidence and returned into court his report containing his findings of fact and conclusions of law. For present purposes it may be said the commissioner suggested that D. W. Schmitt should be ousted and enjoined from the practice of the law. After the commissioner had filed his report the plaintiff filed its motion, in which, after directing attention to the fact that service had been had upon Schmitt in his capacity as manager, "National Pure Trust Service, Rocky Mountain Division," it asked that the recommendation of ouster be amended to include him in that capacity and that as so amended the report of the commissioner should be approved. Thereupon Schmitt filed a motion that the plaintiff's motion should be stricken for the asserted reasons Schmitt had not been so served, and the evidence had not been taken as though he were present in such capacity. The State's motion is allowed. We need not demonstrate that service of summons was had on Schmitt as manager further than as above shown, nor resolve whatever conflict there may have been about appearances before the commissioner for Schmitt filed an answer individually and as manager and is in court in both capacities.

Schmitt also filed a motion that certain of the suggested findings of fact and conclusions of law contained in the commissioner's report be set aside. This motion is not only long, but argumentative

in character. In essence, what is later said herein justifies our ruling that the motion should be and it is denied.

The cause is now for determination on the State's motion that D. W. Schmitt individually and D. W. Schmitt, Manager, "National Pure Trust Service, Rocky Mountain Division," be ousted and enjoined from the practice of law within this state. We recognize the rule contended for by the defendants that in an original proceedings in this court, the findings and conclusions of our commissioner are advisory only and that it is our duty to examine the record and therefrom to find the facts and make our own conclusions of law (*State, ex rel., v. Buchanan*, 142 Kan. 515, 51 P. 2d 5, and *State, ex rel., v. Harvey*, 148 Kan. 166, 80 P. 2d 1095). Under such circumstances we shall not set out here the various suggested findings of fact and conclusions of law of the commissioner, but shall proceed to the record as abstracted. Although the defendants have filed a counterabstract to bring before us an exhibit and some testimony not included in the abstract, there is no contention that otherwise the abstract does not fully and accurately reflect the oral testimony and documentary evidence.

We shall not detail the testimony of ten witnesses called by the state, nor that of Schmitt and two witnesses called by him, as well as the documentary evidence, all of which has been carefully read and studied, but shall restrict our statements rather generally to the conclusions we have reached.

In a preliminary way it may be noted that defendants' difficulties arise from an effort to sell what is called a "Pure Trust Indenture." This document was copyrighted and sold by "National Pure Trust Service," Chicago, Illinois. According to Schmitt it was prepared by one Phipps, who told Schmitt he was a disbarred lawyer. We are not concerned with the legal sufficiency of this document nor whether it accomplishes the results claimed for it, and therefore do not review it. Schmitt's own testimony shows that he was never admitted to practice law in Kansas nor elsewhere; that commencing in the spring of 1948 he was in Kansas at various times selling or attempting to sell the copyrighted Pure Trust Indenture and that from March 1950 to March 1952 he spent about ten percent of his time in this state. Other testimony shows that during the latter two years he sold the trust indenture to at least eight persons, receiving from them sums ranging from $300 to $3,125, of which he received commissions at varying rates. His own testimony as to rates varies.

He stated he started selling at twenty-five percent; that he was then getting fifty percent but a little later said he was back to twenty-five percent. The testimony as to the amount of the charge also varies. One witness who paid a total of $3,000 stated he understood he paid at the rate of $2,000 for each $150,000 of his assets. Other testimony indicated that the charge made depended to an extent at least on the value of the assets of the prospective creator of a trust.

On the primary question as to whether Schmitt was engaged in the practice of law the record discloses and we find that he approached a number of prospective purchasers of the trust indenture form and service, to some of whom he stated he was not a lawyer and to others the matter was not mentioned. In talking with his prospective purchasers he gave his version of what a pure trust is and how it differed from such arrangements as partnerships and corporations and the disadvantages of the latter; that a pure trust is irrevocable and the creator or trustor conveys his property to trustees; that the trustor could not be trustee for himself but could be one of two or more trustees; that beneficial certificates would issue to the trustor who could make disposition thereof as he chose; that the creation of the trust dispensed with any necessity for probating the trustor's estate; that there would be no gift, inheritance or estate taxes; that the trustor would be relieved of any liability concerning the property conveyed; that there would be no gift tax on the beneficial certificates the trustor might give the members of his family or otherwise dispose of, in that they constituted contingent and not vested interests and had no present value, the value being dependent on benefits later to be declared by the trustee or trustees. In at least one instance Schmitt advised a prospective purchaser concerning his life insurance and its being made part of a trust estate. He also advised prospective purchasers that in event a purchase was made, forms of minutes to be kept by the trustees would be furnished and the trust serviced by National Pure Trust Service. We further find that Schmitt wrote a letter to an accountant concerning a conference with a prospective purchaser at which the three had been present, in which Schmitt reviews the statements made by him at the conference. In that letter he refers to the beneficial certificates to be issued under the proposed trust; that the interest of the holder is that of a contingent remainderman and he then defines remainders, both vested and contingent, and the effect of the trust in creating them. We do not consider it necessary to further review our conclusions as to what the evidence proves.

While the answering defendants attempt to explain the facts disclosed by the testimony and stress the evidence that Schmitt never told any witness he was a lawyer, actually there is not much dispute of fact, and the suggested findings of fact of our commissioner are approved. The question then is do those facts show that Schmitt, in both capacities, has been engaged in the practice of law?

Before discussing that question we shall dispose of certain contentions of the defendants that the commencement and maintenance of this action constitute an abuse of authority by the attorney general. The argument is predicated on a contention that no purchaser of the trust forms or service from defendants made any complaints and that the action was commenced at the instigation of certain attorneys specializing in tax matters, and that those attorneys are the persons who will benefit by a judgment adverse to the defendants and that defendants question the sound discretion of the attorney general where the instigators of his action are seeking relief from a situation which may prove costly to them in their private practice. In support they cite only the dissenting opinion in *Depew v. Wichita Retail Credit Ass'n,* 141 Kan. 481, 42 P. 2d 214. That action was one in injunction. The dissenting opinion is that the action should have been instituted by the state on the relation of the county attorney or attorney general. That dissent, if it is to be relied on in any event, does not help the defendants here.

The contention above made must be considered in connection with that next made by defendants that the committee on Illegal Practice of the Law of the State Bar Association did not make an investigation and recommend action by the attorney general.

With respect to both of the above contentions it is observed that we do not try the motives of complaining parties, nor if a complaint of unlawful practice of law is made is it necessary that the complaint be first made to the above committee and investigated by it. The attorney general is charged with the duty of enforcing the law and if he is advised of violations, such as are here complained of, he has the duty to take appropriate action. In *State, ex rel., v. Perkins,* 138 Kan. 899, 28 P. 2d 765, it was held:

"This court has constitutional, statutory and inherent jurisdiction to inquire by what authority one assumes to practice law in this state and to make appropriate orders relating thereto. A proceeding in the nature of quo warranto by the state on the relation of the attorney-general is appropriate for that purpose." (Syl. ¶ 2.)

Neither of the two contentions can be sustained.

The difficulty of framing a comprehensive definition of the practice of law has been recognized by many courts arising under many varying states of fact. See annotations in 111 A. L. R. 19; 125 A. L. R. 1173; and 151 A. L. R. 781. In this state the question of such a definition has received attention and in *State ex rel., v. Perkins*, supra, after directing attention to some authorities this court stated:

"One who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law." (l. c. 908.)

And in *Depew v. Wichita Association of Credit Men*, 142 Kan. 403, 49 P. 2d 1041, the above statement was approved. (See Syl. ¶ 2, and l. c. 412.) Both of the above cases recognize that practice of law does not necessarily include appearance in court on litigated matters, but covers services rendered to a client in advising him of his rights.

Defendants contend that Schmitt was merely a salesman of the trust indenture form and as such was not engaged in the practice of law; that in order to practice law and to give legal advice and counsel it is necessary that the giver of such advice and counsel have a client, and that he had none and he directs our attention to the definition set forth in 7 C. J. S. 702, § 2, that a client is one who applies to a lawyer for advice in a question of law or commits his cause to the lawyer's management in prosecuting a claim or defending a suit in a court of justice. It is true there is no specific evidence that any person directly solicited any advice from Schmitt, but there is evidence that as a result of his solicitation of one person to purchase his trust indenture other persons did consult him, and as a result, in both instances, that he explained his indenture and then made statements and representations as above set forth. It strains credulity to assume that any person would pay or agree to pay Schmitt, or any principal he may have had, sums running into thousands of dollars for a form of trust indenture, the intrinsic value of which could at the most be less than ten dollars, unless the purchaser were convinced by the legal expositions made by Schmitt that not only practically but legally he was being greatly advantaged in his property, its management during his lifetime and its disposition after his death. Nor are we moved by any argument that Schmitt specifically told certain of his prospective purchasers that he was not a lawyer, or that to others he made no statement whatever, and that there is no evidence he told any person he was a lawyer. Schmitt's activities are to be judged by what he did.

We shall not review the many cases cited in the above A. L. R. annotations, which include those arising in this state, for we are satisfied that the evidence discloses that Schmitt did give legal advice and counsel to those who stood in the relation of a client to him, respecting their property, their holding and management thereof, the effect of changes in the form of ownership in which it was held, tax consequences arising from its being held or disposed of, necessity for probate of an estate after death, so-called death taxes, and kindred matters, all of which was done for a consideration embodied in the price charged for the trust indenture and service. That Schmitt was acting as an attorney at law and a member of the bar of this state, without being licensed so to do, is clear.

Neither party has directed attention to *People v. Schmitt,* 126 Colo. 546, 251 P. 2d 915, decided December 15, 1952, rehearing denied January 5, 1953. The defendant in that case is the same Schmitt involved in the instant case. There the action arose under a statute making it a contempt of court to engage in the practice of law without being admitted to the bar of the state. The report of the commissioner in that case reveals evidence pertaining to the National Pure Trust Service not unlike some of that produced in the instant case. That court found Schmitt guilty of contempt, and assessed a fine, and directed that if it be not paid within a stated time he be incarcerated in a county jail for a period of ninety days or until the fine had been paid.

Judgment is entered for plaintiff and against defendants, D. W. Schmitt and D. W. Schmitt, Manager, "National Pure Trust Service, Rocky Mountain Division," who are adjudged to have been engaged in the practice of law without right or authority and without being licensed so to do by this court, and D. W. Schmitt, in either capacity, is ordered and directed to cease his practices in giving advice to purchasers or prospective purchasers of the National Pure Trust Service, as to the establishment and maintenance of trusts and any and all legal rights and liabilities incident thereto or of the rights and liabilities of the creators or beneficiaries thereof, and to cease in any manner whatsoever to engage in the practice of law. And it is further ordered that all of the costs, including the costs incurred by our commissioner and the compensation allowed him by this court, be adjudged against the above named defendants.