No. 42,026

KEITH MARTIN, *Appellant,* v. JOSEPH S. DAVIS AS PROBATE JUDGE OF JOHNSON COUNTY, KANSAS, *Appellee.*

(357 P. 2d 782)

Opinion filed December 10, 1960.

*Keith Martin,* of Kansas City, Missouri, and Mission, Kansas, argued the cause *pro se,* and *Howard E. Payne, W. C. Jones* and *H. Thomas Payne,* of Olathe, were with him on the briefs for appellant.

*John J. Gardner,* County Attorney, of Olathe, argued the cause and was on the briefs for the appellee.

*D. B. Lang,* of counsel, Bar Association of Kansas, of Scott City, *James E. Fussell,* of counsel, Leavenworth County Bar Association, of Leavenworth, and *Willard L. Phillips, James K. Cubbison, Lee E. Weeks, Edward M. Boddington, Sr., Charles F. Williams, Joseph T. Carey* and *Bernard W. Alden,* all of Kansas City, were on the briefs of the Wyandotte County Bar Association as *amicus curiae.*

*George A. Lowe, Eugene T. Hackler, Roy S. Lowe, Hugh H. Kreamer* and *James H. Bradley,* of Olathe, and *Bernis G. Terry,* of Mission, were on the briefs of the Johnson County Bar Association as *amicus curiae.*

The opinion of the court was delivered by

FATZER, J.: At issue is the power of the supreme court of Kansas to control and supervise the practice of law before the courts of the state by Kansas licensed attorneys regularly engaged in the practice of law in another state.

The action was one in mandamus to compel the appellee, the probate judge of Johnson County, Kansas, to permit the plaintiff,

Keith Martin, to file cases in that court and to appear and try them without the appearance or association of local counsel as required by Rules 41 and 54 of this court, amended December 15, 1958, and to declare those rules unconstitutional and void as contravening the Fourteenth Amendment to the Constitution of the United States. The district court quashed the alternative writ and the plaintiff appealed. The principal question presented was before this court in *Taylor v. Taylor,* 185 Kan. 324, 342 P. 2d 190, *certiorari* denied 361 U. S. 374, 4 L. Ed. 2d 380, 80 S. Ct. 401, and was decided adversely to the appellant.

In the interest of brevity Rules 41 and 54, and G. S. 1949, 7-104 therein referred to, are not set forth since the portions here pertinent were quoted at length in *Taylor v. Taylor,* supra, pp. 326 and 327, and are incorporated in this opinion by reference. Suffice it to say those rules, as amended, provide in substance that an attorney admitted to the Bar of Kansas who has been admitted to the Bar of another state and who is regularly engaged in the practice of law in that state shall associate local counsel before he can appear in the courts or before boards or commissions of Kansas. While rules of the supreme court form no part of the statutory law of the state, the revisor of statutes publishes them in the general statutes, and the reader may find Rule 41 as G. S. 1959 Supp., 7-122, and Rule 54 as G. S. 1959 Supp., 60-3827.

The petition alleged that the appellant was graduated from the University of Kansas Law School in 1947 and almost immediately thereafter, in August, 1947, was duly licensed to practice law in the state of Missouri, and since that time has regularly practiced law and maintained his office in the Bryant Building, Kansas City, Jackson County, Missouri. On February 12, 1948, he was admitted to practice law before the supreme court of Kansas and all inferior courts, and since April 1948 has continuously maintained an office and his residence in Mission, Johnson County, Kansas.

The appellant alleged he is engaged in the general practice of law and that his clients frequently live in one county and either work or have business connections in another county and state and that their problems involve the laws and procedures of Kansas and Missouri, and that his knowledge of the laws and procedures and his ability to practice in either state have been of assistance to him in obtaining clients and in being able to give them counsel and court representation; that he consults with as many clients in his Kansas

office or home as in his Missouri office although most of his office work is performed in his Missouri office; that he has represented the State Highway Commission in litigation in Kansas courts and has tried as many litigated matters in the courts of Kansas as in Missouri; that he has also tried cases in the federal courts of each state and has argued cases in the appellate courts of each state as well as the United States Circuit Court of Appeals for the Eighth and Tenth Circuits; that since 1951 he has been attorney for the city of Mission and is presently a member of the State Board of Tax Appeals of Kansas; that he wrote an article on Kansas Procedure published in 6 Kansas Law Review, p. 134, and that he has been and is a member of the state and local Bar associations of Kansas and Missouri.

Martin alleged that his net income from the practice of law exceeded $15,000 per year and that approximately one half of that sum has been earned in Kansas and has been so reported on his Kansas state income tax returns; that a large portion of his income is derived from his appearances in the defendant's court which has jurisdiction of adoptions and decedents' estates; that the minimum fee schedules of the Johnson and Wyandotte County Bar Associations require that local counsel be compensated approximately one-third to one-half of the fee for the particular litigation; that prior to the amending of Rules 41 and 54 and the decision in the Taylor case, *supra,* he regularly appeared for clients without the appearance and association of local counsel but that subsequent thereto the defendant has not allowed him to appear and try cases in the probate court of Johnson County unless he has local counsel associated with him, and the defendant has informed him that in the future he cannot appear as attorney for clients without the appearance and association of local counsel as required by Rules 41 and 54.

Martin alleged that Rules 41 and 54 are vague, arbitrary and without standards and have caused his Kansas license to be in fact a nullity as long as he practices law "regularly" in Missouri; that those rules not only deprive him of part of his income from his Kansas practice but also discourage clients from seeking his services; that because he cannot represent them in Kansas courts without the appearance of another lawyer, they have come to believe he cannot counsel them regarding Kansas law or represent them in Kansas courts; that the amended rules place him in the category of a foreign attorney as referred to in G. S. 1949, 7-104,

and render his Kansas license inoperative so long as he "regularly" practices in Missouri unless he has another Kansas lawyer associated and appearing with him; that he has continuously listed and maintained telephones in his offices in Kansas and Missouri and his residence, and that since 1948 Kansas lawyers have obtained service of pleadings upon him by mailing them to his Kansas office or residence or have left them at either place.

Martin alleged that the amended rules deny him due process and equal protection of the law in violation of the Fourteenth Amendment of the Constitution of the United States and that unless the defendant allows him to appear in the probate court of Johnson County in all cases now pending and all future cases without the appearance and association of local counsel he will lose clients and a substantial part of his income and will be deprived of the right to practice his profession in the defendant's court. Further, that his Kansas license granted him the right to appear in the supreme court and in all inferior courts including the court presided over by the defendant.

Martin further alleged that he had no adequate remedy at law; that as a matter of right he was entitled to file cases in the defendant's court and try them without appearance and association of local counsel; that he has suffered and will suffer irreparable injury if the defendant is not compelled to permit him to file and try lawsuits without appearance and association of local counsel. The prayer was that the relief sought be granted and that amended Rules 41 and 54 and G. S. 1949, 7-104 be declared unconstitutional and void.

The defendant, appearing by the county attorney of Johnson County, filed a motion to quash the alternative writ upon the ground that neither the writ nor the petition alleged facts showing that Martin was entitled to the relief sought.

Prior to hearing the matter, the Johnson County Bar Association filed an application to intervene as *amicus curiae* upon the ground that the questions raised were of interest and concern to that association and it was granted leave to file such pleadings as it deemed proper. The committee on Unauthorized Practice of the Law of the Wyandotte County Bar Association made no application to enter the case as *amicus curiae*, but did appear and offered assistance to the county attorney in the trial of the matter.

The district court sustained the defendant's motion to quash the alternative writ, and Martin duly perfected this appeal.

Before discussing the legal questions here presented it should be noted that during the pendency of this appeal the committee on Unauthorized Practice of the Law of the Wyandotte County Bar Association made application and was granted leave to file its brief as *amicus curiae* in support of the district court's judgment. The Leavenworth County Bar Association and the Bar Association of the State of Kansas joined in that brief. Likewise, the committee on Unauthorized Practice of the Law of the Johnson County Bar Association asked for and was granted leave to file its brief as *amicus curiae* for the same purpose.

When this case was heard on the merits, the appellant argued that this court does not have power to adopt rules relating to the admission of applicants to the Bar, or to regulate and control the practice of law by attorneys previously admitted, hence, Rules 41 and 54 are ineffective and meaningless. The contention is without merit. The constitution of Kansas distinctly distributes the powers of the government to the executive, legislative and judicial departments. Under Article 3, Section 1 the judicial power is vested in a supreme court, district courts, probate courts, justice of the peace, and such other courts, inferior to the supreme court, as may be provided by law. Under that provision of the constitution, the supreme court stands at the head of the judicial department (*Householder v. Morrill,* 55 Kan. 317, 40 P. 66) and is invested with inherent power arising from its creation, or from the fact that it is a court. Inherent power is essential to its being and dignity, and does not require an express grant to confer it. (*Petition of Florida State Bar Ass'n,* 40 So. 2d 902.) It is not an arbitrary and despotic power to be exercised at the pleasure of the court, or because of passion, prejudice or personal hostility; rather, it is one to be used with moderation and caution in the exercise of sound judicial discretion. (7 C. J. S., Attorney and Client, § 18, p. 729.)

It is unnecessary here to explore the limits of judicial power conferred by that provision, but suffice it to say the practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to regulate the practice naturally and logically belongs to the judicial department of the government. (*In re Integration of Nebraska State Bar Ass'n,* 133 Neb. 283, 275 N. W. 265, 114 A. L. R. 151.) Included in that

power is the supreme court's inherent right to prescribe conditions for admission to the Bar, to define, supervise, regulate and control the practice of law, whether in or out of court, and this is so notwithstanding acts of the legislature in the exercise of its police power to protect the public interest and welfare. (*The People v. Goodman,* 366 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1; *Integration of Bar Case,* 244 Wis. 8, 11 N. W. 2d 604, 151 A. L. R. 586; 5 Am. Jur., Attorneys at Law, § 2.) It follows that the power of the supreme court to make reasonable rules for those purposes is not open to question. (*Peyton's Appeal,* 12 Kan. 398; *Farlin v. Sook,* 30 Kan. 401, 1 P. 123; *In re Smith,* 73 Kan. 743, 85 P. 584; *In re Wilson,* 79 Kan. 450, 100 P. 75; *In re Gorsuch,* 113 Kan. 380, 214 P. 794; *In re Hanson,* 134 Kan. 165, 5 P. 2d 1088; *State, ex rel., v. Perkins,* 138 Kan. 899, 28 P. 2d 765; *Depew v. Wichita Association of Credit Men,* 142 Kan. 403, 49 P. 2d 1041; *State, ex rel., v. Schmitt,* 174 Kan. 581, 258 P. 2d 228; *Taylor v. Taylor,* supra.)

The appellant next contends that when he was admitted to the Bar of this court in 1948 Rules 41 and 54 did not require him to associate local counsel as a condition to his appearance in courts of the state, and argues that the amendments in December 1958 operate to suspend his right to practice law in Kansas because he regularly practices in another state. He further contends that the court's order admitting him to practice was a final judgment and conditions not a part of that judgment cannot be subsequently imposed. The contentions lack substance. Attorneys at law are a specially qualified class of persons for the purpose of assisting the state and its tribunals to administer justice. While they do not hold an office or public trust in a constitutional or statutory sense, they are, because of their close intimate relationship to the courts, an important part of the judicial system of the state and are "officers of the court" (*In re Gorsuch,* supra; *In re Hanson,* supra; *State, ex rel., v. Perkins,* supra; *Depew v. Wichita Association of Credit Men,* supra.) Although G. S. 1949, 7-102 provides who may be admitted to practice in all the courts of the state upon taking the oath prescribed, the statutory regulation is effective and directory only when it accords with the inherent power of the judiciary because the licensees are officers of the court. (*Depew v. Wichita Association of Credit Men,* supra, p. 406.)

The supreme court's legitimate concern for maintaining high standards for the practice of the law and the administration of

justice extends beyond the initial licensing of attorneys. Without the power of supervision and control, the initial examination would afford little, if any, opportunity to determine the continuing qualifications of attorneys practicing before it and the inferior courts of the state, or when the privilege of practicing law has been forfeited. When admitted to the Bar, attorneys at law become amenable to the rules and discipline of the court in all matters of order and procedure and to the supervision and control of the practice of law not in conflict with the constitution. Since the rules in question operate uniformly upon all members of the Bar from the time of their adoption, the appellant, like all other attorneys who become subject to their provisions, was bound to comply with them in his practice of the law in this state. Moreover, no final judgment resulted when he was admitted to the Bar—a license or privilege was merely conferred upon him to engage in the practice of law (*In re Casebier,* 129 Kan. 853, 855, 284 P. 611; *In re Hanson,* supra) for the term of his life or until disbarred by a court of competent jurisdiction. (*Hanson v. Grattan,* 84 Kan. 843, 115 P. 646.) The practice of the law has been defined in *State, ex rel., v. Perkins,* supra, and *Depew v. Wichita Association of Credit Men,* supra, p. 408, and both cases recognize that it does not only include appearances in court on litigated matters, but covers services rendered to a client in advising him of his rights. See, also, *State, ex rel., v. Schmitt,* supra, p. 588. Hence the appellant, although he regularly practices law in Missouri, is not prohibited from practicing law in Kansas by counseling and advising his clients, or preparing documents requiring knowledge of legal principles not possessed by a layman, or of advising the city officials, as city attorney. Neither is he prohibited from practicing before the courts and tribunals of this state whenever he wishes—he has only to comply with the condition imposed of associating with local counsel. In *Taylor v. Taylor,* supra, it was said:

". . . Martin's license to practice law before the courts of the state of Kansas has not been in dispute nor has he been disbarred. . . ." (l. c. 328.)

Clearly, Rules 41 and 54 do not revoke or suspend the appellant's license or right to practice law in this state, nor did they change the provision of the statutory law (G. S. 1949, 7-104); their practical effect was to extend the statute's coverage to include those members of the Kansas Bar who regularly engage in the practice of law in another state.

We now turn to the principal question, whether Rules 41 and 54

violate the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. The appellant contends that, as applied to him, they lack a rational connection between the grounds for "suspension" of his license and qualifications *essential* to the practice of law, and, between the "suspension" of his license and *any* objective the court might legitimately attain in the exercise of its power to maintain the standards of the Bar, and relies upon *Schware v. Board of Bar Examiners,* 353 U. S. 232, 238, 1 L. Ed. 2d 796, 77 S. Ct. 752; *Knoigsberg v. State Bar,* 353 U. S. 252, 1 L. Ed. 2d 810, 77 S. Ct. 722, and *In re Patterson,* 353 U. S. 952, 1 L. Ed. 2d 906, 77 S. Ct. 869. We are cognizant of what was said and held in those cases, but they do not control the question presented.

When this court adopted the amendments to Rules 41 and 54 it was aware of and took judicial notice of the following: Wyandotte and Johnson Counties in Kansas lie along the state line opposite Jackson County, Missouri, and contain a combined area approximately equal to that of Jackson County. Wyandotte County ranks second in population in Kansas and Johnson County ranks fourth. Those three counties, Jackson, Wyandotte and Johnson, make up the greater part of one metropolitan area which has a population of about one million. The largest of the downtown areas of the Kansas Cities is in Missouri where approximately 2100 practicing attorneys maintain their offices. Of that number, an estimated 300 are Kansas licensed attorneys who reside in Kansas but who regularly practice in Missouri. Some of them, however, maintain an individual part-time practice in Johnson and Wyandotte Counties, are listed in the telephone directory, and, like the appellant, have their names on office doors of, and share office space with, accountants, architects, dentists and real estate brokers. There are approximately 200 active resident practicing attorneys maintaining offices in Wyandotte County and approximately 90 active resident practicing attorneys maintaining offices in Johnson County. Thus, the largest number of practicing attorneys—seven to one—are officed on the Missouri side.

On the Kansas side, in the diked bottom land lying along the Kansas and Missouri Rivers, are located the large industrial areas which include all of the large packing plants, stockyards, a Fiberglass industry, an oil refinery, a motor assembly plant, and many other hazardous industries. Accordingly, a greater number of ac-

cidents in the workmen's compensation and personal injury field occur in Kansas. Litigation arising from those accidents is controlled by Kansas law and falls within the jurisdiction of the Kansas courts.

In the workmen's compensation field alone the volume of business conducted by the courts and commissions in Wyandotte and Johnson Counties runs on a weekly average of 80 to 100 cases, with approximately 40 to 50 percent represented by Kansas City, Missouri, attorneys having local Kansas counsel associated with them. In addition to workmen's compensation cases, Wyandotte County, with four divisions of its district court at Kansas City, Kansas, had an average case load of 2500 to 2600 civil and 350 to 400 criminal cases per year. Its city court, with two divisions, had a case load of approximately 3900 civil cases and from 900 to 950 preliminary hearings in criminal cases per year, including misdemeanors. Its probate court had an extremely heavy docket of proceedings relating to decedents' estates as well as many guardianship cases, and it also had an extensive case load in its juvenile division. The Johnson County District Court, with four divisions at Olathe, had an average case load of approximately 900 to 1000 civil and approximately 100 criminal cases per year. Like Wyandotte County, its probate court had an extensive case load of decedents' estates as well as guardianship proceedings and other matters, and its magistrate court handled in excess of 1000 cases per year.

In the main, that litigation was handled by attorneys falling within four distinct categories: resident Missouri attorneys who associated local Kansas counsel as required by G. S. 1949, 7-104; resident Kansas attorneys maintaining offices in Wyandotte and Johnson Counties; resident Kansas attorneys regularly practicing in Missouri who associated local Kansas counsel, and resident Kansas attorneys who maintained a part-time practice in Kansas but who regularly practiced law and maintained their principal offices in Missouri.

From the totality of the foregoing, Kansas courts and commissions encountered difficulty in procuring the presence of the Kansas licensed attorneys officed in Missouri at the call of the court's and the commission's dockets; in the inability of Kansas officed attorneys to procure service on Missouri officed Kansas attorneys without having to proceed to another state; in the failure of some Kansas licensed attorneys officed in Missouri to answer calls to ap-

pear on matters of urgency, and in the failure of those attorneys to familiarize themselves with the rules of local practice and procedure by reason of their infrequent appearance before the courts and tribunals. Altogether too frequently, the courts were faced with the necessity of deciding a case of some technicality caused by the violation of rules established for the practice before the Kansas courts and commissions and because of conflicting statutory provisions between the states of Kansas and Missouri with respect to different periods of general statute limitations (Missouri Revised Statutes, 516.110, § 1, *et seq.*; G. S. 1949, 60-306) and limitations relating to master and servant (see, generally, Missouri Revised statutes, 287.430; G. S. 1959 Supp., 44-520a).

In carrying out its duty of supervising the actions of its officers, the supreme court cannot always formulate rules without the possibility, regrettably, that some one of them may work a hardship on some member or group of members of the Bar. The appellant alleges such a hardship, but, as we have seen, the rules in question were directed to serve the public policy of the state in all phases of actions, hearings and proceedings where the applicant or litigant is represented by a Kansas licensed attorney who is regularly engaged in the practice of law in another state. While the police power is generally considered an exclusive power of the legislature, it may, for reasons not necessary to detail here, be exercised by the courts. (*Workmen's Compensation Board v. Abbott*, 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789; *Petition of Florida State Bar Ass'n*, 40 So. 2d 902.)

It is within the permissible function of the state through the supreme court to classify members of the Bar when a real, logical and substantial basis exists for the classification. The equal protection of the law clause does not restrain the normal exercise of governmental power, but only abuse in the exertion of such authority. That clause is not offended against simply because as the result of the exercise of the power to classify some inequality may be occasioned. (*Louisville & Nashville R. R. v. Melton*, 218 U. S. 36, 54 L. Ed. 921, 30 S. Ct. 676.) There is no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. (*Magoun v. Illinois Trust & Savings Bank*, 170 U. S. 283, 294, 42 L. Ed. 1037,

18 S. Ct. 594.) A state has a wide range of discretion in distinguishing, selecting and classifying, and it has been held that it was sufficient to satisfy the demand of the Constitution of the United States if a classification was practical and not palpably arbitrary. (*Orient Insurance Company v. Daggs*, 172 U. S. 557, 43 L. Ed. 552, 19 S. Ct. 281.)

The same is true of the due process clause. The enjoyment of property is subject to the exercise by the state of the police power, and the question whether what has been done amounts to a taking of property is whether such taking was pursuant to a valid exercise of that power (12 Am. Jur., Constitutional Law, § 652, p. 344), or, as in the instant case, the valid exercise of inherent power of the supreme court to regulate, supervise and control the practice of law before the courts of the state, which is the equivalent of the police power. Regulations are not unconstitutional merely because they operate as a restraint upon private rights of persons or property, or will result in a loss to individuals. The infliction of such loss is not a deprivation of property without due process of law—the exertion of the police power upon objects lying within its scope in a proper and lawful manner is due process of law. Hence, the police power may be exerted as a restraint upon private rights of persons or to regulate the use of property, and where appropriate or necessary, prohibit the use of property for certain purposes in aid of the public safety and general welfare, and constitutional limitations form no impediment to its exercise where the regulation is reasonable and bears a fair relationship to the object sought to be attained. (*Schaake v. Dolley*, 85 Kan. 598, 118 P. 80, 37 L. R. A. [NS] 877; *Dey v. Knights & Ladies of Security*, 113 Kan. 86, 213 P. 1066; *McNaughton v. Johnson*, 242 U. S. 344, 61 L. Ed. 352, 37 S. Ct. 178; *State v. Mugler*, 29 Kan. 252, 123 U. S. 623, 31 L. Ed. 205, 8 S. Ct. 273; *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 55 L. Ed. 369, 31 S. Ct. 337; *Armour & Co. v. North Dakota*, 240 U. S. 510, 60 L. Ed. 771, 36 S. Ct. 440.)

When those general principles are applied to the appellant's argument that the classification made is arbitrary, without standard and unreasonable, we think they are decisive against the contention. The classification encompasses members of the Kansas Bar regularly engaged in the practice of law in another state, and is a natural one. The difference between that group of attorneys,

who are required to associate local counsel, and resident members of the Kansas Bar, who are not so required, rests upon a consideration which is real as distinguished from one which is fanciful, and has a direct and substantial relation to the object to be attained—the removal of obstacles to a greater public welfare, that is, delays in the orderly administration of justice by Kansas courts and commissions, and, also, to provide litigants in those tribunals with the service of a resident attorney familiar with local rules, procedure and practice and upon whom service may be had in all matters connected with actions or proceedings proper to be served upon an attorney of record.

We think the classification is further justified upon the consideration that in the past decade or so the manner in which law is practiced has tended to swing with emphasis to the specialist. There has developed much new and complex law which has had and will continue to have a profound effect upon the general practice of the law. Those complexities have led to Trial Lawyers versus Office Lawyers; the development of law firms by congregation of specialists; the use of lawyers in trust and title companies, and strong corporate legal departments. Litigation invokes statutory laws, rules of courts, and peculiarities of local practice requiring special knowledge and opinions. Such matters are best handled by a local attorney who constantly deals with problems arising in a variety of situations. Trial work requires immediate decisions—there is little time for reflections and research. Only the lawyer with considerable experience in a particular forum can adequately and consistently render high-level service in the area of local procedure. It is highly desirable that the legal profession recognize those developments, understand them, and adjust as needed so the public will be adequately protected and the profession strengthened and not weakened.

While the appellant alleges a loss of income as a result of the rules and also that they have discouraged clients from seeking his services because they have come to believe he cannot counsel them or represent them in Kansas courts, nonetheless his regular practice in Missouri has placed him within the classification provided and he is in that group by his own selection and volition. He has not been singled out or made an example of (*Taylor v. Taylor*, supra, p. 328), nor has he been discriminated against. He is not the only Kansas licensed attorney affected—any member of the Kan-

sas Bar who, like the appellant, regularly engages in the practice of law in another state is bound to comply with the rules. Neither does the fact that his home is in Kansas where he keeps the Kansas reports; that he shares office space with an accountant where he keeps the general statutes of Kansas; that he has attained high scholastic achievements; that he is the author of an article on Kansas procedure, and is a respected member of the Local and State Bar Associations lessen the binding effect of the rules as applied to him. Looking at all the circumstances that attend, we cannot say that the object sought to be accomplished by the rules presents a clear, unmistakable infringement of the appellant's rights secured by the fundamental law. (*Murphy v. California*, 225 U. S. 623, 56 L. Ed. 1229, 32 S. Ct. 697, 41 L. R. A. [NS] 153.)

During the pendency of this appeal the appellant made application to file the same brief as he filed as counsel for the appellant in the Taylor case, *supra*, which was allowed. The same point of law presented in that appeal is presented and reargued here, the only difference being that in the instant appeal the appellant was the plaintiff below. It was held in the Taylor case that he was not denied due process of law or the equal protection of the law, and we reaffirm that holding. This opinion is concluded with the observation there is no substantial and fair ground to say that the rules in question make an unreasonable and unfounded classification thereby denying to the appellant due process of law or the equal protection of the law.

The judgment is affirmed.