**MARK B. ARONSON and KENNETH W. BEHREND**
on behalf of all others similarly situated, Plaintiffs
v.
**DANIEL W. AMBROSE, Chairman of the District Court of the Virgin Islands Committee of Bar Examiners and other members of the Committee of Bar Examiners of the District Court of the Virgin Islands, Defendants**

Civil No. 326-1971

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 17, 1972

MARK B. ARONSON and KENNETH W. BEHREND, ESQS., Pittsburgh, Pa., *for plaintiffs*

DANIEL W. AMBROSE, RICHARD E. GRUNERT, VINCENT A. GAMAL, WINSTON A. HODGE, ROGER L. CAMPBELL, ESQS., Committee of Bar Examiners of the District Court of

the Virgin Islands, Charlotte Amalie, St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

### OPINION

Plaintiffs are before this court challenging the refusal of the Committee of Bar Examiners to recommend their admission to the practice of law in this jurisdiction.[1] By letter of June 9, 1971, the plaintiffs were informed that on the face of their applications, they did not meet the requirements for admission. Three reasons were assigned:

1. they had not passed the Virgin Islands Bar Examination as required by Rule 56(d) of the Rules of the District Court;

2. they had not alleged that they would have resided in the Virgin Islands for at least one year immediately preceding their proposed admission in conformity with Rule 56(b)(4) of the Rules of the District Court;

3. they had not alleged that if admitted to practice they intended to continue to reside and practice law in the Virgin Islands, as Rule 56(b)(5) of the District Court requires.

Plaintiffs dispute all of these subsections of Rule 56 of the Rules of the District Court of the Virgin Islands as violative of both the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, extended to the Virgin Islands by section 3 of the Revised Organic Act, as amended. On these bases, various relief is requested including a judgment declaring each of these subsections of Rule 56 unconstitutional, and injunctive relief to restrain defendants' enforcement of the

---

[1] This action was instituted on behalf of an alleged class, but no proof having been offered as to that allegation, and no attempt having been made to comply with Rule 23 of the Federal Rules of Civil Procedure, it shall be deemed a *private* action. The jurisdiction of this court will be in no way affected.

one year residency requirement prior to admission to the Bar, as well as the prospective residency requirement. Plaintiffs also seek injunctive relief directing the Committee to enforce Rule 56(d),[2] as effective on the date of their application, which then provided that every applicant for admission to the Bar was required to take a written Bar examination, with the exception of one who was "an inhabitant of the Virgin Islands, who was domiciled therein at the time he commenced his law studies, and who continue[d] to be domiciled in the Virgin Islands up to the time of the filing of an application for admission to the Virgin Islands Bar," and who had passed the written bar examination required by the jurisdiction "in which the law school from which the said applicant graduated" was located—as though this exception for inhabitants applied to all applicants.

As injunctive relief would only be available, if otherwise proper, as a means of implementing a determination of unconstitutionality, defendant's objections to plaintiffs' showing in that regard need not now be considered.

■ As to the constitutionality of Rule 56, plaintiffs argue that enforcement of the requirements therein result in such discrimination among rationally indistinguishable persons as to deny them Equal Protection of the law. Treating both prior and prospective residency requirements as of legally equivalent significance, plaintiffs suggest that the question is controlled by two opinions of fairly recent vintage, Keenan v. Board of Law Examiners of the State of North Carolina, 317 F.Supp. 1350 (D.C. N.C., 1970) and Webster v. Wofford, 321 F.Supp. 1259 (D.C. Ga. 1970).

[2] Amended July 31, 1971, Rule 56, subsection (d), 5 V.I.C. App. V, now reads: "all applicants for admission to the Virgin Islands Bar shall take the written bar examination as prescribed in paragraph (a) of this rule, as amended, and shall be eligible for admission, being otherwise qualified, upon the successful completion of the said examination."

These cases held that local requirements of one year's residency prior to admission to the Bar were unconstitutional. Plaintiffs in both actions had assumed residence and declared their intention to continue such residence in the respective jurisdictions, and questioned only the validity of the rule prohibiting their admission to the Bar until they had so resided for a year. All but one plaintiff in one case had taken the required written examinations, and as to that one, the court refused relief, Keenan v. Board, 317 F.Supp. 1350, 1362. Thus, those cases cannot in themselves sustain the argument advanced by these plaintiffs that this jurisdiction may not in any way condition the privilege of practicing law upon residence. Moreover, if these plaintiffs, in their intentionally sweeping attack on the imposed qualifications to membership in the Virgin Islands Bar Association, have been properly denied the defendant's recommendation because of their insistance that they do not intend to become full-time residents or practitioners here, they are without standing to raise the argument that the prior residency requirement, disapproved elsewhere, is unconstitutional. Their standing in an action to declare this rule or any part thereof unconstitutional requires a finding that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of [the rule's] enforcement . . . ." Massachusetts v. Mellon, 262 U.S. 477 (1923). If, as to these plaintiffs, there is no injury caused by enforcement of this rule, because by effect of a perfectly valid provision they are in any event not entitled to the relief they seek—admission to the Bar—they may not in this action demand that the court consider the validity of all other requirements which might, if plaintiffs' present factual circumstances were to change at some future date, then prevent their admission. In re Metropolitan Utilities District, 179 Neb. 783, 140 N.W.2d 626 (1966). This principle

is a required precept of constitutional law "because of two rules rigidly adhered to:

1. never anticipate a question of constitutional law in advance of the necessity of deciding it;

2. never formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." U.S. v. Raines, 362 U.S. 17, 21 (1960). Although these directives of the Supreme Court clearly go much further, this, at least, they clearly require: where holding a rule or statute unconstitutional would not result in the personal relief a plaintiff seeks—would have in effect no direct and immediate impact on the party seeking such a holding—that person has no standing before the court to insist on the decision (see generally on this point cases collected at 16 Am.Jur.2d (Constitutional Law) § 123 n. 1 and n. 6), and the court itself certainly may not, as offerings of obiter dictum, decide constitutional questions.

Thus, these plaintiffs may only assert their arguments on the issue involved in the North Carolina and Georgia cases, supra, if none of the other provisions they challenge have been properly invoked by the committee as a basis for refusing them favorable consideration.

The plaintiffs suggest, in their analysis of Rule 56(b)(5) which requires an intention on the part of applicants to reside and practice law in this jurisdiction on a full-time basis, Virgin Islands Bar Association v. Dench, 215 F.2d 810 (3 Cir. 1954), "that an illegal distinction is drawn" between those who can and those who cannot prove that they intend to reside in the Virgin Islands and to practice law here after being admitted to the Bar. Plaintiffs do not suggest that distinctions, indeed discrimination, are per se unconstitutional under the Equal Protection clause. As the Supreme Court said in Tigner v. Texas, 310 U.S. 141, 147 (1940): "The Fourteenth Amendment enjoins 'the equal protection of the laws,' and laws are

not abstract propositions. They do not relate to abstract units A, B and C, but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies. The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."

 The Supreme Court in Tigner clearly emphasizes a well established element in the test under the Equal Protection clause: where there is a rational basis for a differentiation in law between two classes, no constitutional question arises. Nor is the fact that the differentiation is between residents and nonresidents conclusive. E.g. Taylor v. Crawford, 74 N.E. 1905, 1069 (1906); Benson v. Schneider, 68 N.W.2d 665 (1955). Moreover, where such a policy-justified line is drawn, minimal imprecision is not a fatal flaw. Rather, as the court explained in Metropolis Theatre Co. v. Chicago, 228 U.S. 61, 69–70 (1913), "The problems of government are practical ones and may justify if they do not require, rough accommodations—illogical, it may be, and unscientific . . . what is best is not always discernible; the wisdom of any choice may be disputed or condemned." Such "rough accommodations" are not violative of Equal Protection unless they are "hostile and invidious," Welch v. Henry, 305 U.S. 134, 144 (1938). Plaintiffs, under these standards, must show that the rule they challenge creates an irrational or invidious classification, and, necessarily, that distinctions between resident and nonresident in the practice of law are without rational foundation. Plaintiffs have offered several arguments purporting to establish the irrational and invidious nature of this classification, principally relying, it would appear, on the charge that they might easily have falsified their applications to allege an intent to reside in this jurisdiction, and by reason of the ease with which this rule might thus be circumvented, they should be rewarded for their hon-

esty with admission to the Bar. However, it may briefly be noted that the rationality of a decision that resident attorneys can more thoroughly perform the duties of their office than could their nonresident counterparts, is not in any way dependent upon the ease or difficulty of implementing such a decision.[3]

Plaintiffs also argue that they intend, if admitted to practice here, to be "technical residents" "for the time they are here" (see plaintiffs Pre-Hearing Memorandum of Points and Authorities, October 20, 1971) and thus to open a local law office, pay taxes here, "be responsible to their clients for following all the local Rules of Practice," and so on. Consequently, they argue that at least as to them the refusal to admit nonresidents to the Bar is irrational, as they would in every way compare favorably with attorneys domiciled here. Yet, contrary to the rule stated in Metropolis Theatre Co. v. Chicago, supra even if plaintiffs were entitled to demand the eradication of a rule designed to prevent dangers threatened by a larger class, of which plaintiffs may be in this regard somewhat unrepresentative, their specific promises do not account for the more comprehensive problems which, as defendants suggest, explain this rule. Defendants refer to some significant considerations which support their position. The Virgin Islands lie approximately 1,500 miles overseas from the continental United States and, of course, air travel is the only practical mode of transportation between the two. The expenses of such "commuting" aside, there are seasonal problems created by the extensive tourist volume, and for months at a time, passenger space aboard commercial aircraft may be completely unavailable without reservations secured well in advance. For an attorney, who must be subject to summons from the courts, other at-

---

[3] (Indeed, such an argument reflects unflattering light on plaintiff's suggestion that the one year prior residency requirement is irrational.)

torneys, and clients, in the event of unscheduled but often unavoidable problems, to be physically unable to appear, would be intolerable. The nationwide concern over delay in processing the legal business of the court systems with dispatch as recently articulated by Mr. Chief Justice Burger, cannot be ignored. And that concern is well-founded. Endless delays in court proceedings may cause serious financial difficulty for civil litigants, and more important, according to correctional authorities, may well cause serious problems in the rehabilitation of criminal convicts. The burden on a defendant charged with crime who is ultimately found to be innocent, after months of delay because of his attorney's unavailability, is, without question, a factor which must be weighed in the evaluation of a rule of residency such as ours. On a daily basis, where an attorney's presence may not be important, negotiations and consultations may be necessary, and it is reasonable to consider the expense and inconvenience involved for resident attorneys in telephone communication.[4] Where immediate intercourse is not required, but written communication is necessary or appropriate, these very plaintiffs have already discovered in their efforts to represent a client by admission pro hac vice (Behrend and Aronson v. Estate of Burke and Island Yachts, Civil No. 178-1970), delay in transmission of documents to be served or letters would present a serious difficulty, both to the nonresident attorney and to the resident. Defendants also raise the problem of court appointment to represent indigent defendants, which obligation upon each practicing attorney in this jurisdiction is frequent because there is no office of public defender for either the municipal or district courts. This obligation, assuming plaintiffs would not presume to

---

[4] Telephone service in this jurisdiction is not, it should be noted, precisely equivalent to that available in the continental U.S. and on occasion, an attorney accustomed to practice there might be surprised to discover that his or her telephone would not invariably be a connection with the legal community here.

suggest that nonresidents should be exempted, would make it impossible for an attorney to limit his practice to non-litigation, for instance, or to structure his calendar so that he would only appear here at his convenience. In a more general vein, resident attorneys are subject to the rather close scrutiny of the bench, and Bar, and it has never been suggested that the practice of law was not properly to be so reviewed. To the contrary, the Supreme Court has upheld state statutes requiring out-of-state attorneys to affiliate with a member of the local Bar in order to practice before state tribunals, intended to insure, among other things, judicial control over the attorneys, Martin v. Walton, 368 U.S. 25 (1961). In that case, Kansas urged a number of justifications for its rule including a desire to insure that there be an attorney before the court familiar with local rules, procedure and practice, and upon whom service of process might be had; to insure the presence of an attorney of record at docket call; and to resolve the problem of out-of-state attorneys failing to respond on calls of urgency. Plaintiffs before this court may, very much like the attorneys in the Martin case, appear pro hac vice on specific matters, with the introduction of a member of this Bar. This they have already done. But like the attorneys in that case, they insist that the Bar has no right to condition their practice even in that manner. The Supreme Court, on a closely parallel set of facts, has held that such conditions are "not beyond the allowable range of state action under the Fourteenth Amendment . . . , [n]or does the fact that the Rules may result in 'incidental individual inequality' make them offensive to the Fourteenth Amendment." Martin v. Walton, supra.

Related questions have been before distinguished courts, and those courts have systematically implied that admission to practice before them could be conditioned, as necessary, upon any reasonable qualifications, specifically

including residence. "Some federal district courts give general admission to lawyers who are admitted by the courts of the other states and who are nonresidents of the state in which the district court sits. But there is no requirement by any law or regulation, state or national, that this be done." Application of Wasserman, 240 F.2d 213, 215 (9 Cir. 1956); c.f., In re Pierce, 207 N.W. 966 (1926) (Wisconsin residence requirement); Application of Stevens, 355 P.2d 164 (1960), (Alaskan residency requirement); Application of Kerno, 151 N.Y.S.2d 29, (1956) (New York residency requirement).

Plaintiffs have also raised, by suggestion, the due process clause as allegedly contravened by Rule 56, although this has not been stressed. But as the Supreme Court of Kansas wrote in rejecting a similar suggestion,

"The enjoyment of property is subject to the exercise by the state of the police power, and the question whether what has been done amounts to a taking of property is whether such taking was pursuant to a valid exercise of that power, or, as in the instant case, the valid exercise of inherent power of the . . . court to regulate, supervise and control the practice of law before the courts of the state, which is the equivalent of the police power. Regulations are not unconstitutional merely because they operate as a restraint upon private rights of persons or property, or will result in a loss to individuals . . . . [C]onstitutional limitations form no impediment . . . where the regulation is reasonable and bears a fair relationship to the object sought to be attained," (citations omitted), Martin v. Davis, 357 P.2d 782, 791 (1960), Appeal denied, 368 U.S. 25, rehearing denied, 368 U.S. 945.

Application of these principles to the Kansas rule distinguishing between members of that Bar regularly engaged in the practice of law elsewhere, and members not so engaged, resulted in a firm decision by that court that the rule was valid. The court found the classification "natural", resting upon considerations "real as distinguished from . . . fanciful," and having "direct and substantial relation to the object to be attained—the removal of obstacles to

a greater public welfare, that is, delays in the orderly administration of justice by Kansas courts . . . and, also, to provide litigants in those tribunals with the service of a resident attorney familiar with local rules, procedure and practice and upon whom service may be had . . ." 357 P.2d at 791.

■ The rule of residency imposed as a condition to the privilege of practicing law in this jurisdiction is, similarly, a "natural" classification, as the policy considerations previously outlined demonstrate. There is no deprivation of due process of law in this requirement.

■ One final argument has been raised. Plaintiffs suggest that the residency requirement, conditioning the right to practice law in this jurisdiction on both full-time practice and residence here, is unconstitutional as an impermissible burden on their right of interstate movement. Invoking principles set down dramatically in Shapiro v. Thompson, 394 U.S. 618 (1969), they maintain that our limitation on the right to follow a profession here which they elsewhere now pursue hinders their freedom to travel freely between Pennsylvania and the Virgin Islands, practicing law all the while. Although some apparent distinctions exist between the burden involved in welfare denial and that occasioned by Rule 56(b)(5), there is no need to discuss them in this case because, in any event, neither the holding nor the rationale of Shapiro requires or encourages a decision that Rule 56(b)(5) is unconstitutional. Whatever may be the relevance of that opinion to the issue of prior residency, the Supreme Court emphasized repeatedly in its discussion that the right to travel with which it was concerned was one of "migration"; involving "resettling", "finding a new job", "starting a new life". An attempt to interfere with the right merely to enter a state or territory would be objectionable on other grounds. It is clear, however, that the provision in question does

none of these things—it leaves citizens free to travel here at their leisure, and to migrate here if they so desire. Only the somewhat irresponsible combination the plaintiffs happen to desire is made difficult. By analogy, it appears highly unlikely that the Supreme Court intended to suggest in Shapiro that citizens have an unrestricted right to hop and meander from state to state, collecting welfare benefits at each station. So in this instance, plaintiffs constitutionally protected right to travel—either to vacation or to settle—is unimpaired by Rule 56(b)(5), but the privilege they demand in addition is not one which has been dignified with Constitutional significance.

On all grounds, therefore, plaintiffs challenge to this rule is without merit. Consequently, the Committee's refusal to recommend their admission to the Bar was proper on the authority of this provision alone, and whether or not other rules cited by the Committee and attacked by plaintiffs may be Constitutionally infirm is not a question properly before this court.

Plaintiffs' complaint will be dismissed.[5]

---

[5] It may be noted in passing, however, that the rules not reviewed are also based on substantial and practical policy considerations which, in the view of this court as supervisor of the Bar of the Virgin Islands, deserve serious deference in the event of any future challenge.

As to Rule 56(b)(4), requiring one year's residence before admission to the bar, the constitutional question has not been determined by a court whose decisions would bind this jurisdiction. Keenan and Webster are merely opinions of U.S. District Courts whose power and authority are entirely distinct from our own. See Ferguson v. Kwik Chek Stores, Inc. (D.C.V.I. 1970) 7 V.I. 639, the Supreme Court specifically stated in Shapiro: "we imply no view of the validity of waiting-period or residence requirement determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." 394 U.S. 618, 638 n. 21 (emphasis supplied). As the question has thus been specially reserved, this court feels no obligation to broaden the rationale to cover an entirely different context—regulation of the practice of a highly sensitive profession infused with potential impact on the public welfare—particularly at a time when members of this profession are being widely questioned on difficult to discover incidents creating possible conflicts of interest and perhaps more important, misuse of the courtroom and the judicial system as a whole.

The courts in Keenan and Webster evidently discredited the argument

that requiring a prospective lawyer to live in the state for a year before granting the right to practice gave the jurisdiction an opportunity to observe his or her character and ethics, and also forced the applicant to establish a stake in the community. Whether or not such an argument is forceful in those jurisdictions, it is of indisputable validity here in these small, somewhat isolated islands, for reasons which it is not here necessary to rehearse.

The court would also note, to "Old Rule" 56(d) that considerations of a remedial nature, in response to an unexplainable and intolerable situation which was existent, promoted adoption of that provision. Though the rule as challenged has since been amended, eliminating any constitutional problems and thus making any such discussion purely historical, the serious concerns reflected in that rule deserve some mention. Prior to the amendment admitting domiciliaries without requiring that they sit the bar examination here, if they had passed a bar exam in the state where they attended law school, native law school graduates found, almost without exception, that they never received passing marks on the local examination. This was true even in cases where the applicant had successfully passed difficult bar examinations elsewhere. The result of this was that virtually no native attorneys were being admitted to the Virgin Islands Bar. They were effectively compelled to go elsewhere to practice, although their expertise born of experience with local culture, language and community would have been invaluable to this court and to the public. Other circumstances further clarify the problem: the examination was regularly administered here to one or two persons, at times a few more, and the examiners were aware of the applicant's name and, obviously his or her identity. Because the pattern obtained that the same native applicants who failed the examination here, where they were so clearly identified, had passed examinations in large states where they were anonymous, it was felt that an invidious discrimination might be a factor, and the court was prevailed upon to admit to the bar any domiciliary who had gone away to law school, passed an examination administered by the bar in the state of his or her legal education, and then returned home to practice law. Since the adoption of this rule the situation has changed drastically for the better, and so, in a significant fashion has the composition of the bar. With the addition of those native born attorneys admitted under Rule 56(d) the bar has begun to approach the composition which the population here would lead one to expect. Thus, although the rule has now been amended to delete this provision, I feel it well-served an important and valid function—compensation for previous apparent discrimination—and in that light, its constitutionality should not now be questioned.