QUESTION: Can a municipality or any governmental entity prevent nonresidents from the use of its facilities, particularly municipally owned beaches or parks?
SUMMARY: Although duly enacted state and local legislation is presumptively valid, legislation which excludes nonresidents from public parks and beaches is probably invalid because such legislation exceeds the authority of the local legislative body concerned, violates the privileges and immunities clause and equal protection clause of the Fourteenth Amendment of the United States Constitution, and violates the "public trust doctrine." The question presented is of paramount public interest affecting every citizen of, and visitor to, the State of Florida. Our dramatic population increases, concentrated heavily within coastal areas, have resulted in a situation tinged with irony. The Florida Constitution, statutes, and decisional law confirm the right of its citizens to the use of the sovereign beaches and waters of this state. However, the line of condominiums, resort hotels, and other tourist facilities constructed along our coasts is rapidly forming a barrier which denies to many Floridians reasonable access to the Atlantic Ocean and the Gulf of Mexico. The result is that more and more Floridians are being afforded less and less beach access as coastal development continues. The problem of public access briefly sketched above is worsened, as a practical matter, as cities begin to block off the diminishing modes of ingress by closing municipally owned beaches to nonresidents. In AGO 072-326 I cited the law in Florida to the effect that the public cannot gain access to sovereign waters by trespass upon private property where no public prescriptive easement exists. See City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974). Thus, in addition to the question which you have raised, is the issue of whether a municipality may effectively bar nonresidents from access to sovereign beaches. A consideration of your inquiry must start with the proposition that public beaches and parks are held not for the sole use of the people of a particular community, but for the use of the general public without reference to the residence of the user. As such, they are of more than local interest and become a concern of the state. [See] 24 Fla. Jur. Parks and Recreation Centers s. 6, p. 175. In AGO 062-142 it was stated that The dominant aim in the establishment of public parks appears to be the common good of mankind, rather than the special gain or private benefit of a particular city or town. . . . Such public parks are held not for the sole use of the people of a particular municipality, but for the use of the general public which the legislature represents. . . . That opinion went on to hold that the City of Delray Beach, both pursuant to the foregoing general language and relevant provisions of its municipal charter, was without authority to restrict the use of its beach to residents of the community. See also Burnham v. Davis Islands, Inc., 87 So.2d 97, 100 (Fla. 1956), dealing with the public dedication of a golf course, in which it was stated that "strictly speaking, there can be no dedication to private uses, or to uses public in their nature but the enjoyment of which is restricted to a limited part of the public." See also Ch. 418, F.S., authorizing municipalities and counties to dedicate and set apart municipally owned or leased property for use as public playgrounds and recreation centers. But see Ch. 166, F.S., granting broad home rule powers to municipalities. This traditional policy of nondiscrimination in access to public beaches and parks is further supported by constitutional provisions prohibiting any state from making or enforcing any law which abridges the privileges or immunities of citizens of the United States and from denying any person within its jurisdiction the equal protection of the laws. Amendment 14, s. 1, U.S. Const. In Toomer v. Witsell, 334 U.S. 385 (1948), it was stated that the privileges and immunities clause bars discrimination against citizens of other states . . . where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other states. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus, the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. See also Borden v. Selden, 146 N.W.2d 306 (Ia. 1966); Brown v. Anderson,202 F. Supp. 96 (D. Ala. 1962); State v. Kemp, 44 N.W.2d 214 (S.D. 1950), appeal dismissed 340 U.S. 923 (1951), in which it was held that, since it had been shown that noncitizens constituted a peculiar source of danger to South Dakota's migratory waterfowl breeding grounds, a statute which prohibited issuance of waterfowl hunting licenses to nonresidents was valid. Thus, with respect to the application of the privileges and immunities clause to the instant inquiry, in order to be valid, local or state legislation which has the effect of excluding nonresidents of the state from public beaches and parks must have as the purpose for such discrimination the prevention of some peculiar evil attributable to nonresidents. Such legislation cannot discriminate against a class of persons merely because they are nonresidents. With respect to the requirements of the equal protection clause, the United States Supreme Court has recently developed a so-called "two-tiered" approach, one known as the "strict scrutiny" or the "compelling state interest" test, and the other known as the "minimal scrutiny" or "rational relationship" test. The "strict scrutiny" test is applied when rights properly classified as "fundamental," such as the right to travel [Shapiro v. Thompson,394 U.S. 618 (1969); Eggert v. City of Seattle, 505 P.2d 801
(1972)], the right to vote [Dunn v. Blumstein, 405 U.S. 330
(1972); Harper v. Virginia Board of Elections, 383 U.S. 663
(1966)], and the right to essential facilities for prosecution of a criminal appeal [Griffin v. Illinois, 351 U.S. 12 (1956)], are involved; or when the classification is predicated upon certain "suspect" classifications, such as race [Loving v. Virginia,388 U.S. 1 (1967)], alienage [Graham v. Richardson, 403 U.S. 365
(1971)], and national origin [Hernandez v. Texas, 347 U.S. 475
(1954); Oyama v. California, 332 U.S. 633 (1948)]. On the other hand, if neither a fundamental right nor a suspect classification is involved, the statute or regulation is presumptively valid and will not be disturbed unless without a reasonable relation to a valid state purpose. In McGowan v. Maryland, 366 U.S. 420, 426
(1961), Chief Justice Warren enunciated the "minimal scrutiny" test in these words: "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." No case has been found which holds that a classification based upon a bona fide residence requirement is predicated upon a "suspect" classification. See comment, Applying Equal Protection to Bona Fide Residence Requirements, 59 Ia. L.Rev. 671 (1974), in which a distinction is drawn between durational residency requirements which unconstitutionally burden a fundamental right, such as the right to travel (Shapiro v. Thompson, supra), or the right to vote (Dunn v. Blumstein, supra); and a bona fide residence requirement, such as one requiring persons to be residents of a community in order to vote in local elections. See Evans v. Cornman, 398 U.S. 419, 422-423 (1970); Carrington v. Rash, 380 U.S. 89, 93-94 (1965). Neither has any case been found which holds that use of all public parks and beaches for recreational purposes involves a "fundamental right." Thus, the "minimal scrutiny" or "rational relationship" test should apply to the instant inquiry. This test is similar to the standard utilized in determining whether a violation of the privileges and immunity clause has occurred, in that a rational foundation for a distinction between residents and nonresidents must be shown in order to sustain such a classification. In Aronson v. Ambrose,366 F. Supp. 37 (D. Virgin Islands, 1972), aff'd 479 F.2d 75 (1973), cert. denied, 414 U.S. 854, a federal district court upheld the refusal of bar examiners to admit applicants to the Virgin Islands bar who would not allege that, if admitted, they intended to reside and practice in the Virgin Islands. This discrimination against nonresidents was considered justified on the ground that the distance of the Virgin Islands from the continental United States makes it difficult for nonresident attorneys to be subject to court process and scrutiny, or accessible to clients and other attorneys in the event of unscheduled but often unavoidable problems, and would perceptibly slow the court system in the Virgin Islands. Cf. McClain v. City of South Pasadena,318 P.2d 199 (Cal.App. 1957). Likewise in the instant situation, the equal protection clause requires that the exclusion of nonresidents from municipally owned beaches and parks be based on a rational distinction between residents and nonresidents. Such classification cannot discriminate against a class of persons merely because they are nonresidents of the municipality. Finally, that part of your inquiry which relates to nonresident access to municipally owned beaches raises a special problem. In Neptune City v. Avon-By-The-Sea, 294 A.2d 47 (N.J. 1972), the New Jersey Supreme Court held that the "public trust doctrine," or common-law right of access to the ocean in all citizens of the state, dictates that beach and ocean waters must be open to all on equal terms and without preference and that any contrary state or municipal action is impermissible. Therefore, where the upland sand area was owned by a municipality and dedicated to public beach purposes, the use of such municipal beach could not be restricted to municipal residents. (The court did hold that a municipality could regulate and limit, on a first come, first served basis, the number of persons allowed on the beach at any one time in the interest of safety.) Similarly, in a recent decision of the Florida Supreme Court, it was stated that the right of the public of access to, and enjoyment of, Florida's oceans and beaches has long been recognized in this state. City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73, 75 (1974). The court cited White v. Hughes, 190 So. 446 (Fla. 1939), involving the construction of a highway along the shore area, in which the following language appears: The Sovereign state may in the interest of the general welfare authorize the beach or shore to be appropriately used as a public highway. . . . However, we are of the opinion that such an authorization for highway uses must be subject to reasonable use of the beach or shore for its primary and long established public purposes, for which the State holds it in trust, and subject to lawful governmental regulations. (Emphasis supplied.) The Tona-Rama opinion went on to hold that if the public's recreational use of a privately owned sandy area adjacent to the mean high tide has been ancient, reasonable, without interruption, and free from dispute, such use, as a matter of custom, should not be interfered with by the owner. However, the owner is allowed to make any use of his property which is consistent with such public use and is not calculated to interfere with the exercise of the right of the public to enjoy the dry sandy area as a recreational adjunct of the wet sand or foreshore area, which is held by the state in trust for the people. [See]294 So.2d at 78. Therefore, with regard to the instant inquiry, a municipality in Florida cannot close a municipally owned upland beach area to state citizens who are nonresidents of the municipality, where a public easement has been established on such beach; and, of course, a municipality cannot exclude persons from that part of the beach between the mean high and low water lines, which is held by the state in trust for all Floridians. Moreover, it might also be argued with some success that consistent with Neptune City v. Avon-By-The-Sea, supra, any attempt by a municipality to exclude nonresidents from a municipally owned beach dedicated to public use is a violation of the "public trust doctrine." See also Art. X, s. 11, State Const., giving constitutional status to the "public trust doctrine." In sum, therefore, any state or local legislation which excludes nonresidents from public parks and beaches, although presumptively valid, is subject to being held invalid on several significant legal grounds, and any effort to enforce such legislation should be carefully considered.