No. 46,566

STATE OF KANSAS, *Petitioner,* v. ROBERT E. BLASE, *Respondent.*

(494 P. 2d 1224)

Opinion filed March 4, 1972.

*Vern Miller,* attorney general, and *Edward G. Collister,* assistant attorney general, for the petitioner.

Respondent *Robert E. Blase* appeared *pro se* and by *Lester A. Holloway,* of Wichita.

*Per Curiam:* This is an original proceeding in which the respondent is charged with criminal, indirect contempt of this court.

After appropriate preliminary proceedings, conforming to K. S. A. 20-1204, the respondent attorney was charged in an amended accusation with two counts of contempt of this court's order of July 16, 1971, which suspended him from the practice of law for a period of six months. (*In re Blase,* 207 Kan. 843, 486 P. 2d 839.) The two counts are:

I. "Respondent nevertheless, on July 28, 1971, appeared as, and held himself out to be, an attorney at law before the Board of County Commissioners of Sedgwick County, Kansas, representing one Ralph Korber, or one Walter Korber, or both, of Wichita, Kansas."

II. "On or about August 31, 1971, and October 9, 1971, as well as on at least one and perhaps several occasions between those dates, Respondent performed services as an attorney at law on behalf of Linda Lee and Billy Joe Long, Wichita, Kansas, in connection with bankruptcy cases filed by both Mr. and Mrs. Long and various creditor problems related thereto."

Both courses of conduct were alleged to constitute the practice of law, in violation of this court's order of suspension.

Respondent filed an answer to the amended accusation, denying that his conduct constituted the "practice of law," and denying any "willful" violation of this court's order.

The Honorable Leo A. McNalley, a retired district judge, was appointed by this court as its commissioner to hear evidence. On December 27, 1971, he filed his report in which, after reciting the appearances and the history of this participation, he reports:

*"Findings of Fact*

"1. Respondent was suspended from the practice of law for a period of six months from and after July 16, 1971, by order of the Supreme Court of the State of Kansas entered in Bar Docket No. 2697 and reported as *In Re Blase,* 207 Kan. 843, 486 P. 2d (1971).

"2. Respondent had actual knowledge of such order, had consented thereto in writing prior to its entry, and admitted having actual knowledge of such order by his answer filed in this contempt proceeding.

"3. Ralph Korber and Walter Korber are owners of separate tracts of land in Sedgwick County that were being included in a proposed water district whose incorporation was pending before the Board of County Commissioners of Sedgwick County. Respondent met with Ralph Korber and advised him that certain restrictions might be imposed on land in the district that would prevent his land from being developed. Korbers planned to develop the land for industrial purposes. Respondent advised Ralph Korber that he would appear before the County Commissioners and request that his land be excluded from the district.

"4. Mr. Paul Buchanan is a practicing attorney in Wichita and was one of the attorneys employed to organize the water district. On or about July 21, 1971, the respondent in a telephone conversation with Mr. Paul Buchanan informed Mr. Buchanan that he represented the Korber brothers in connection with the proposed water district. In response to an inquiry about the powers of incorporators, the respondent was told by Mr. Buchanan that the corporation had no right to tax.

"5. Respondent appeared before said Commissioners on July 28, 1971, and stated:

" 'I'm Bob Blase, for the record, and I would like  . . . .

" '. . . I represent Ralph Kober, who owns the land,  . . . and he prefers not to be in this district because of further curtailment of restrictions that might appear in the development of his land on 81st and High.

" 'I also appear for Walter Korber, who has land which is in the northeast corner of the district, who is not objecting to the district being formed.

" '. . . I didn't get a satisfactory answer except that you did not have the power to tax. They don't want any more restrictions on the development of land because this is industrial development land, and they don't want any more restrictions than what they have got now.  . . .'

"6. Respondent had represented both the Korber brothers as their attorney in the past. It was customary for the Korbers, when they had a legal problem, to inform respondent of that problem and request that he take care of the

matter. There is no evidence that a fee was either charged or paid for the service of the respondent before the Commissioners.

"7. At the time of his appearance before the County Commissioners, the Korbers had no knowledge of the suspension of the respondent's license to practice law. When Walter Korber later learned of the suspension, he expressed concern as to whether or not, since the respondent was without a license to practice law, the action taken by the County Commissioners would be valid.

"8. Respondent was a licensed real estate broker at all times material hereto but did not inform the County Commissioners that he appeared as such and not as an attorney at law. Respondent has been active in the practice of law in Sedgwick County since his admission to the Bar of this state in 1934 and is well known as an attorney therein.

"9. Linda Lee and Billy Joe Long, 804 South Main, Wichita, Kansas, came to the office of Blase, Holloway & Blase, sometime during the month of July, 1971, and requested to see Mr. Robert Blase, respondent. On being informed that Mr. Blase was out of town on vacation, they discussed a possible bankruptcy proceeding with Mr. Lester Holloway, respondent's partner. Mr. Holloway informed them that the fee for filing the bankruptcy petition would be $400, and in addition, the Longs would have to pay $106 in filing fees and court costs. Mr. and Mrs. Long could not raise the money so they did not return to the law office until after respondent had returned to Wichita, Kansas.

"10. Mr. and Mrs. Long came to Mr. Blase's office on August 31, 1971, and discussed the bankruptcy problem with him. On that date, Mr. and Mrs. Long and respondent were the only persons present. Mr. and Mrs. Long had made out a list of creditors, along with the amounts due on each account. This information was given to respondent. Mr. and Mrs. Long also paid a $10 sum of money to apply on filing fees, and Mr. Blase gave them a receipt on a printed form of the law firm of Blase, Holloway & Blase, Attorneys at Law, signed Blase, Holloway & Blase by Robert E. Blase, number 0391. Copies of receipts issued for payments made by the Longs for the services performed, the same being numbered 0444, dated November 19, 1971; 0423, dated October 22, 1971; 0404, dated September 20, 1971; 0397, dated September 7, 1971; and 0391, dated August 31, 1971; are attached hereto.

"11. Respondent informed Mr. and Mrs. Long that he would represent them and be their attorney, but that Mr. Holloway usually handled all bankruptcy hearings for the firm, and would appear with them in court.

"12. Respondent advised the Longs that he would handle their case for $250, since theirs was a hardship case, and that the filing fee of $106 would have to be paid by October 4, 1971.

"13. Respondent discussed with the Longs the nature of the bankruptcy proceedings and what was involved in taking bankruptcy, as well as the effect of taking bankruptcy.

"14. Respondent advised the Longs to return the next day to sign the necessary papers and get the addresses so that notices of the bankruptcy could be mailed to creditors. The Longs returned to the office as instructed with the information requested, and signed the forms for proceeding with the bankruptcy. The respondent assisted them in filling out the schedules.

"15. The Longs had a problem with a creditor, so Mrs. Long called respondent and asked him what to do. Respondent advised her to ignore the

creditor, but if they contacted the Longs again to tell them that the Longs were going into bankruptcy, and that if there were any questions or someone wanted information, that the caller should be referred to Mr. Blase.

"16. About November 9, 1971, Mrs. Long called respondent to ask respondent if it was legally permissible for the Longs to reaffirm their indebtedness on certain items with Personal Thrift Plan. Respondent advised Mrs. Long that it was permissible as long as there was a new contract for a new price.

"17. Sometime in the middle of November 1971, the Longs were four days behind with the payment on the new contract with Personal Thrift, who called the Longs and demanded immediate surrender of some property. Mrs. Long called respondent, who advised her that Personal Thrift could make the demand according to the contract and suggested that Mr. and Mrs. Long come to respondent's office, get $15 of the $100 respondent had just been paid for fees the day before, and use that money to satisfy Personal Thrift. The Longs made other arrangements for the money and did not withdraw any money from the payment to respondent.

"18. Mr. Holloway appeared at the bankruptcy hearings.

"*Conclusions of Law*

"The Commissioner concludes, beyond a reasonable doubt, that the respondent, Robert E. Blase, is guilty of willful disobedience of the order of this court to forebear in the practice of law in these violations, to-wit:

"*Violation No. 1.*

"The respondent's appearance before the Board of County Commissioners on July 28, 1971, constituted the practice of law.

"*Violation No. 2.*

"The acts of advising the Longs as to the legal rights assisting in preparing documents for filing in bankruptcy, issuing receipts on documented paper showing the respondent as an attorney, are each enjoying and engaging in the practice of law.

"RECOMMENDATION

"Your Commissioner recommends:

"(a) That for Violation No. 1 a suspension of the right to practice law be made for a period of three months in addition to the suspension heretofore ordered by this court on July 16, 1971;

"(b) That for Violation No. 2 a suspension of six months in addition to the suspension heretofore ordered on July 16, 1971, be imposed against the respondent, and that the respondent be ordered to pay a fine of $200 and be ordered to pay the costs of this action, including the expenses of the Commissioner and the court reporter herein.

"(c) That the two suspensions are to run concurrently.

(signed)   Leo A. McNalley

"Leo A. McNalley, Commissioner"

On January 18, 1972, respondent appeared in person before this court in response to our order. At that time he was afforded the opportunity to and did personally present his defense, essentially reasserting his good faith and his inability to ascertain just what constitutes the "practice of law."

This court, having conducted its own independent examination of the record, concludes that the commissioner's findings of fact are abundantly supported by the record, and they are adopted by the court.

The commissioner's conclusions of law are also adopted; respondent's conduct was undoubtedly the practice of law. *State, ex rel., v. Perkins,* 138 Kan. 899, 28 P. 2d 765; *Depew v. Wichita Association of Credit Men,* 142 Kan. 403, 49 P. 2d 1041. We are unimpressed by respondent's argument that he believed in good faith that giving advice on the legal effect of a proposed transaction is not the "practice of law" merely because it does not involve an appearance in court.

This court, on the basis of its own individual examination of the evidence, concurs in the finding of its commissioner that the respondent is guilty beyond a reasonable doubt of the contempts charged in the amended accusation. The recommended penalties are deemed appropriate, except that the fine in our opinion should be $1,000; with that exception they are also adopted.

The result is that the respondent Robert E. Blase is found guilty of contempt as charged in each count of the accusation. He is:

(1) Ordered to pay a fine of $1,000 to the clerk of this court, together with the costs of this action, including the fees of our commissioner and his reporter;

(2) Suspended from the practice of law for an additional period of six months, expiring at midnight July 15, 1972, and until such time as the foregoing fine and costs are paid.

It is so ordered.

OWSLEY, J., not participating.