FRED W. PHELPS, *Appellant,* v. ELWILL M. SHANAHAN, *Appellee.*

(502 P. 2d 768)

Opinion filed November 4, 1972.

*F. G. Manzanares,* of Topeka, argued the cause and was on the brief for the appellant.

*John R. Martin,* first assistant attorney general, argued the cause and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This case involves the eligibility of a candidate at the election of November 7, 1972. Because of the imminence of that election, we announced our decision on September 28, 1972. This opinion is intended to explain the reasoning which led to that decision.

At issue is the interpretation of that part of section 2 of chapter 71, 1972 session laws of Kansas, which prescribes the qualifications for nomination to the newly created office of district attorney:

"No person shall be eligible for nomination to the office of district attorney unless such person shall have been regularly admitted to practice law in the state of Kansas for five (5) years next preceding his nomination for such office: *Provided,* That an attorney who shall have been a county attorney, assistant

county attorney or assistant district attorney for the three (3) years immediately preceding his nomination as district attorney shall be eligible for nomination."

The facts are not in dispute. Fred W. Phelps, the plaintiff-appellant, was regularly admitted to practice law in this state on February 12, 1964, and was issued the customary certificate to that effect.

On September 24, 1969, this court suspended appellant from the practice of law for a period of two years for unprofessional conduct not relevent here. *In re Phelps*, 204 Kan. 16, 459 P. 2d 172, cert. den. 397 U. S. 916, 25 L. Ed. 2d 97, 90 S. Ct. 922. Our order had the effect of suspending him also from practicing in the United States District Court for the District of Kansas under Rule 3 (j) of that court's rules of practice. The suspension expired by its own terms on September 24, 1971.

In June, 1972, appellant filed for nomination for the office of district attorney of the third judicial district (Shawnee county) on the Democratic ticket. He received the highest number of votes at the primary election of August 1, 1972, and was issued a certificate of nomination.

Appellant's nomination was challenged before the state contest board and on August 28, 1972, that body determined that he was ineligible and that his name should therefore not be placed on the general election ballot. The board found that his two-year suspension, falling as it did within the five year period next preceding the primary election of August 1, 1972, rendered appellant ineligible to be nominated at that election. His certificate of nomination was declared invalid.

Thereafter appellant commenced this suit, seeking by mandamus to compel the secretary of state to certify his candidacy and cause his name to be placed on the general election ballot. The action was heard by the district court of Shawnee county, en banc. After making findings of fact, in substance as recited above, the four judges below unanimously reached the following conclusions of law:

"1. The Supreme Court of Kansas has the inherent right to prescribe conditions for admission to the Bar and to define, supervise, regulate and control the practice of law, including the right to disbar or suspend a lawyer from the practice of law in this state.

"2. A person admitted to the Bar in Kansas is given a certificate issued by the Supreme Court and said certificate authorizes said person to regularly engage in the practice of law in this state.

"3. A lawyer holding this certificate is considered a regularly admitted law-

yer and has the privilege to practice law in all the courts of this state so long as he possesses this certificate and this privilege.

"4. A suspension is the temporary deprivation of this certificate and privilege to practice law for a period of time. During said suspension, the lawyer is denied the right to appear as counsel in any court of this state or in the U. S. District Court for the District of Kansas, and denied the right to regularly engage in the practice of law in this state for the period of suspension.

"5. During suspension, the lawyer's status is the same as that of one who is not regularly admitted to practice. The lawyer is still a member of the Bar, but loses his license and the right to practice during said suspension period.

"6. From September 24, 1969, to September 24, 1971, plaintiff was not regularly admitted to practice law in this state.

"7. Where eligibility to public office is restricted to those who have been admitted to practice law, suspension prevents one from assuming such office during this period. Therefore, in computing any period of time prescribed as a requirement to be eligible to hold office, the period of suspension shall not be included.

"8. Section 2, chapter 71, 1972 Session Laws provides that to be eligible for the nomination to the office of District Attorney, the candidate . . . 'shall have been regularly admitted to practice law in the State of Kansas for five (5) years next preceding his nomination for such office.' (Ellipsis in original.)

"9. The terms 'next preceding' in the above section means that for five (5) years 'immediately preceding' the nomination. Therefore, one to be eligible, according to said statutory provision, must have been regularly admitted to practice law in this state for five (5) years immediately preceding the nomination.

"10. Plaintiff has failed to have been regularly admitted to practice law in Kansas for five (5) years immediately prior to August, 1972, as a result of the two (2) year suspension during the period from September 24, 1969, through September 24, 1971.

"11. Plaintiff is denied relief of Mandamus on the basis that he does not possess the qualifications required by law to be eligible for the nomination for the office of District Attorney, Third Judicial District of Kansas, as specifically set out in the findings of fact and conclusions of law made and entered herein."

We agree with these conclusions, and might well rest our decision on a simple adoption of them. Appellant, however, insists that the trial court misconstrued the statute and misconceived the effect of his suspension. The vigor and sincerity with which his arguments are advanced require that we elaborate upon our reasons for rejecting them.

In his primary argument appellant asserts that the statutory phrase "regularly admitted to practice law" is the substantial equivalent of "admitted to the bar." In his view this phrase refers to an *event,* which occurs but once and which confers upon the admittee

a status as a "member of the bar." This status, he says, continues for life, or until disbarment; he cites *Hanson v. Grattan,* 84 Kan. 843, 115 Pac. 646, Syl. ¶ 2, where such a statement may be found.

His subsidiary argument is that suspension does not sever an attorney's relationship to the courts or his *status* as a member of the bar, but merely prevents him from practicing law during the period of suspension. He cites authorities from other jurisdictions which support this proposition, and with which we are in substantial agreement. Thus, for example, a suspended attorney is still subject to the prevailing rules governing the conduct of attorneys, and for their violation during the period of suspension he may be subject to further discipline. *In re Oliver,* 97 Utah 1, 89 P. 2d 229; *In re Byrnes,* 97 Minn. 534, 105 N. W. 965; *State ex rel. Nebraska State Bar Assn. v. Butterfield,* 172 Neb. 645, 111 N. W. 2d 543. Cf., *State v. Blase,* 208 Kan. 969, 494 P. 2d 1224. The court below accepted this principle in its conclusions 4 and 5.

Taken together, appellant's argument forms the following syllogism:

(1) the statute merely requires admission to the bar at least five years prior to nomination;

(2) he was admitted to the bar more than five years prior to August 1, 1972 (and his suspension did not deprive him of his status as a member of the bar);

(3) therefore, he was qualified.

The chief flaw, as we see it, lies in the major premise. We believe that when the legislature used the phrase "regularly admitted to practice law in the state of Kansas for five (5) years next preceding his nomination," it meant something considerably more than appellant suggests. First, the legislature required not that the candidate be regularly admitted "to the bar," but that he be regularly admitted "to practice law." Second, it went on to require that he have been so admitted "for five years," not merely "five years before" his nomination. Finally, the five years cannot be *any* previous five years, but must be those "next preceding" his nomination.

To what end were these specifications and requirements inserted? In examining this question we bear in mind that "the sense and reason of the law are the soul of the law." (Plowden, quoted in *Intoxicating-Liquor Cases,* 25 Kan. 751, 763.) Along the same line, in *Clark v. Murray,* 141 Kan. 533, 41 P. 2d 1042, Syl. ¶ 3, we said:

"When the interpretation of a statute according to the exact and literal import of its words would thwart or contravene the manifest purpose of the

legislature in its enactment, it should be construed according to its spirit and reason, disregarding, as far as may be necessary, the strict letter of the law."

All three elements of the statutory phrase which we consider significant are closely interrelated and reinforce each other. However, in our analysis we look first to the distinction between being admitted "to the bar" and being admitted "to practice law." If a suspended attorney were asked, "Are you regularly admitted to practice law?" we cannot believe he could give an unqualified affirmative answer, either in good conscience or good law. We believe that when it referred to a person "admitted to practice law" the legislature meant one who possessed the *right* to practice.

The second factor in the statute is the concept of a lapse of time which we infer from the phrase "for five years." In our view this concept negates appellant's suggestion that his initial admission to the bar was the critical event, without regard to what happened thereafter. If his theory were correct it would mean that appellant would be eligible even if his suspension had continued up until the present; his admission to the bar in 1964 would alone meet the statutory standard, since his suspension would not have terminated his "status" as an attorney. On oral argument appellant conceded this would be the result of his argument, pushed to its logical conclusion, and blamed the manifest absurdity of such a result on legislative oversight.

A similar argument was made and firmly rejected by this court in *State, ex rel., v. Stice,* 186 Kan. 69, 348 P. 2d 833, cert. den. 364 U. S. 823, 5 L. Ed. 2d 52, 81 S. Ct. 59. There a judge of the Sedgwick county court of common pleas had been disbarred. The applicable statutory provision read:

"Each such judge shall at the time of election be a qualified voter of the county in which such township is located and admitted to practice law before the supreme court of Kansas, and shall have been a practicing attorney for a period of at least five (5) years prior to said election or appointment." (G. S. 1957 Supp. 20-2001.)

The judge resisted the state's effort to oust him from his office, pointing out that the above statute spoke only as of the time of election. Since he had been fully qualified at that time he claimed the right to hold office for the full term, despite his subsequent disbarment. This court looked beyond the apparent meaning of the literal statutory language and found that the qualification, although framed with reference only to the time of election, was clearly intended to

be a continuing qualification to *hold* the office. This, the court said, was the "only reasonable conclusion," and "any other conclusion would lead to an absurdity." (Id., 186 Kan. at 73.) So here, we believe that the "only reasonable conclusion" is that the original admission to practice is not enough—the candidate must continue to have the *right* to practice for the requisite five year period.

That period, as remarked above, must be the five years "next preceding" the election. We perceive only one possible meaning in this language, and that is the meaning ascribed to it by the court below in its conclusion number 9. The clear implication is a continuous five year period, uninterrupted by any period when the candidate was not "regularly admitted to practice law." It is agreed that appellant's suspension fell within this period, and we think the result is the disqualification found below in conclusion number 10.

We see in this phase of the requirements a legislative effort to forestall a contention such as was made in *Hanson v. Cornell*, 136 Kan. 172, 12 P. 2d 802. There, a would-be candidate for district judge had been indefinitely suspended from practice some sixteen years before he filed his nominating petitions. The relevant statute required candidates to have been "regularly admitted" and engaged in the active and continuous practice of law "for a period of at least four years prior to the date of the general election. . . ." Plaintiff, in an original mandamus action, claimed he met that qualification because he had concededly been regularly admitted to the bar, and had been engaged in the "active and continuous practice of law" for almost twenty years prior to his suspension. Plaintiff, there, like appellant here, claimed to comply with the literal language of the statutory requirements. The court gave short shrift to his contention, saying, "Obviously the legislature intended that for one to be qualified to hold the office of judge of the district court, or of the supreme court of this state, his admission to practice law created a status which continued and under which he was engaged in the active and continuous practice of law up to the time of his election to such office." (Id., 136 Kan. at 175.) Thus the court read into the statute an otherwise missing requirement that the four year period be that "next preceding" the election.

The present district attorney statute, unlike the district judge statute in *Hanson v. Cornell*, supra, does not require "active and continuous" practice during the statutory period, but it does require

admission "to practice law" during that period. We find a legislative intent, just as clear as that perceived by the *Hanson* court, that the candidate should have the right to practice during the entire five years.

One further consideration influenced our decision and deserves to be mentioned. As an alternative to admission to practice for five years, a candidate may qualify by serving three years immediately preceding his nomination as a county attorney, assistant county attorney or assistant district attorney. This alternative clearly suggests that the legislature was concerned with the candidate's experience as a lawyer. The district attorney's function is primarily that of a prosecutor, and three years experience in this specialized field was regarded as worth at least as much as five years in the general practice. True, the legislature did not require of the non-prosecutor that he engage in "active" practice during the five years, so that inactivity of the candidate might defeat this legislative policy as well as his suspension. Nevertheless, we cannot conceive that the legislature would have regarded five years of bar membership, all under suspension, as any qualification for this important office. Once again, we conclude that the legislature surely meant the candidate to have at least the *right* to practice for the crucial five years, even if he did not fully exercise that right.

It was for the foregoing reasons that we entered our order affirming the judgment below.

APPROVED BY THE COURT.