No. 63,765

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN, ATTORNEY GENERAL, *Petitioner,* v. FRANKLIN DEE WILLIAMS, *Respondent.*

(793 P.2d 234)

Opinion filed May 25, 1990.

*Steve A. Schwarm and Daniel P. Kolditz*, assistant attorneys general, argued the cause, and *Robert T. Stephan*, attorney general, and *John W. Campbell*, deputy attorney general, were with them for the petitioner.

*Franklin Dee Williams*, respondent, argued the cause pro se.

*Per Curiam*: This is an original action in quo warranto filed by the State of Kansas (State or petitioner), on the relation of the Attorney General of Kansas, to enjoin and restrain Franklin Dee Williams (respondent) from engaging in the unauthorized practice of law.

The State filed its petition on May 19, 1989, and on the 8th day of June 1989 this court ordered Williams to respond to the petition on or before July 3, 1989. On July 3, 1989, Williams filed a voluminous document which purports to be an answer to the State's petition and further attempts to assert claims for relief in quo warranto and mandamus and by way of a cross-claim and counterclaim.

On July 13, 1989, the court appointed the Hon. Frederick Woleslagel, district judge retired, as Commissioner to conduct evidentiary proceedings and to make findings of fact and conclusions of law. The order provides:

"NOW, THEREFORE, IT IS CONSIDERED, ORDERED AND ADJUDGED by the Court that Frederick Woleslagel, be and he is hereby appointed Commissioner in the above entitled case to hear and pass on motions, to take testimony, to hear and receive evidence, to make suggested findings of fact and conclusions of law, and to make his report to this Court for its final determination and judgment. And such Commissioner is hereby authorized and empowered to fix the time and place for hearings, to administer oaths, to issue subpoenas for witnesses, to compel the attendance of witnesses, to require the production of any pertinent papers, books, documents and testimony, to cause the depositions of witnesses to be taken if necessary, and to do any and all other things required, so a complete hearing may be had on all pertinent and relevant matters raised, or which may hereafter be raised, by the parties involved in such case; and to rule upon all legal questions presented in connection with any and all such matters."

The petition of the State alleged that Williams had engaged in the unauthorized practice of law in several district court cases including *North Central Kansas Production Credit Association v. Hansen, et al.*, 85-C-07, Republic County; *The Farm Credit Bank of Wichita v. Linn*, 88-C-20, Morris County; and *Williams v. Postal Savings and Loan Association*, 88-CV-528, Shawnee County. It is alleged that in most of his court appearances Williams claims to represent the Kansas Territorial Agricultural Society (KTAS or Society) as an attorney and counselor for the

Society. Williams signed pleadings on behalf of the KTAS, issued unauthorized cease and desist orders, and in the Morris County proceedings, examined and cross-examined witnesses. Williams is no stranger to this court, and we can take judicial notice of the fact that he has appeared in various courts of this State purporting to be an attorney and purporting to represent the KTAS and others.

The respondent's answer, like most of his pleadings, is for all practical purposes unintelligible. The task of the Commissioner, and of this court, was made extremely difficult due to Williams' lack of any understanding or knowledge of basic legal principles, proper procedure, or the role of an attorney in the American legal system. The Commissioner and this court have been flooded with voluminous, maundering pleadings which defy comprehension and interpretation. The various pleadings of the respondent would appear to assert certain alleged defenses which are totally frivolous and have no basis in law. They include (1) a lack of jurisdiction for the Supreme Court to hear this matter; (2) that Williams is himself the Attorney General of Kansas; (3) that Robert T. Stephan, Attorney General of Kansas, was not properly elected to his office; (4) that Attorney General Stephan and the assistant attorneys general appearing in this case are not entitled to represent the State and are not authorized to practice law; and (5) that Williams is authorized by the charter of the KTAS to represent the Society and appear as an attorney on its behalf.

The Commissioner held a pretrial and discovery conference on September 25, 1989, and an evidentiary hearing on October 25, 1989. Following the October hearing, the parties were granted time in which to file proposed findings of fact and conclusions of law. Thereafter, on December 22, 1989, Commissioner Woleslagel filed his report consisting of findings of fact and conclusions of law and, on January 12, 1990, the respondent filed his exceptions to the Commissioner's report. In April, the parties presented oral argument to this court and respondent filed a twelve-page written argument to supplement his oral remarks.

A review of the voluminous record reveals that the respondent does not deny that he has engaged in the practice of law without being authorized to do so by the Kansas Supreme Court. He asserts that he derives his authority to practice law and appear

as an attorney from the KTAS, which was originally established by 1855 Kansas Territorial Laws, ch. 58, § 1 *et seq.* Respondent asserts § 1 of the said laws grants the KTAS authority to name persons as attorneys entitled to practice law on its behalf even though such persons are not admitted to practice law by the Kansas Supreme Court. In fact, the language respondent relies upon is found in the by-laws of the KTAS and not in the territorial laws.

Commissioner Woleslagel's report reads:

"FINDINGS OF FACT

"1. This is an original action in quo warranto brought by the State of Kansas (State) on relation of the attorney general alleging that Franklin Dee Williams (Williams) has engaged in the unauthorized practice of law within this state.

"The petition requests this court to issue its order enjoining him from the unauthorized practice of law within the state in appearing as counsel or filing papers for others in any courts thereof, or in so assisting any other unauthorized persons to appear as counsel or file papers for others.

"In its petition, and its petition as later amended, the State asked that the Kansas Territorial Agricultural Society (KTAS) be declared a non-entity and similarly enjoined. During the October 25 hearing, the State withdrew its requests for action against KTAS.

"In his answer consisting of 88 numbered paragraphs and many attachments Williams appeared to deny all or some allegations of the petition. He also gratuitously amended the caption of the case to show that he was 'Contestee, and Cross-Claimant' and added 'ROBERT TAFT STEPHAN; and JOHN AND JANE DOES B to Z' as third party defendants. No permission has been granted to add any third parties.

"Further, he denied that this court had jurisdiction; he asserted that the attorneys representing the State were not entitled to do so; he alleged that he was the attorney general of this state; he claimed KTAS authority for his action; he counterclaimed and cross-claimed for actual and punitive damages and asked for an order of mandamus against an unnamed 'lower Court Judge.'

"2. Williams started filing pleadings in the District Court of Morris County on March 23, 1989, in Case Number 88-C-20, *The Federal Land Bank of Wichita v. J.A. Linn, et al.* (the Morris County case) filing 31 pleadings by October 30.

"The nature of the papers filed by Williams is indicated by the following index copied without any editing and with filing dates;

. . . . [The detailed index of pleadings has been omitted.]

"There was also evidence introduced which suggested that Williams appeared in two other courts on behalf of others. In those instances, however,

the evidence was not of sufficient quality to furnish a basis for a finding as to his activity and that evidence was disregarded.

"3. The pleadings were filed on behalf of KTAS or the purported directors or purported members thereof.

"In almost all of the papers filed, the pleader, as identified therein, is KTAS. As the volume of pleadings increased, so did the indicated pleaders. The common variation was to list KTAS and its directors or its members. In three pleadings Williams lists himself as pro se. In one pleading he lists the pleader as the 'State of Kansas and Franklin Dee Williams by and through himself.'

"In yet another, the pleader became the 'State of Kansas and the Board of Directors and the intervenors and cross-claimants.' Notwithstanding the confusion as to the identity of the pleader, the pleadings all bear Williams' signature and appear to be filed on behalf of KTAS or some of its purported members. When asked by the State during the October 25 hearing to either admit or deny that he prepared these papers, he responded, 'I could admit to, Your Honor, that I assisted with that that he read.' (Rec. Vol. 2, page 142.)

"4. In the Morris County case Williams, in the position of representing KTAS, engaged in oral arguments, presented exhibits, and engaged in direct and cross-examination of witnesses.

"At the October 25 hearing, when asked by the State if he had done so, he responded, 'Yes, I think I can admit that, Your Honor.' (Rec. Vol. 2, page 147.)

"5. Unless the KTAS has furnished Williams the right to practice law, he came forward with no license or other authorization to practice law in the Morris County Case.

"In response to the State's questions if he had a license to practice law issued by any state or federal jurisdiction Williams responded, 'Well, the Charter [of KTAS] issues the same license . . .' When asked if he had any license 'other than the Charter' he said, 'I believe the answer to that is probably no.' (Rec. Vol. 2, page 171.) In answer to other questions he admitted he was not a graduate of an accredited law school, was not a legal intern under Kansas Supreme Court Rule 709 [1989 Kan. Ct. R. Annot. 328], not in possession of any temporary authority, and never had any certificate to practice law issued by the Clerk of the Kansas Appellate Courts. (Rec. Vol. 2, pages 172-73.)

"CONCLUSIONS OF LAW

"A. Except for his claim of KTAS authorization to appear as counsel, his defenses to this action are frivolous.

"In the answer he filed in this case, Williams took the position that he had never engaged in the unauthorized practice of law. Except for his claim that he was authorized by the Charter of KTAS, he has failed to suggest any authorization to so practice. To the contrary, he attempts to defend this action by allegations noted earlier that: (1) The Supreme Court does not have quo warranto jurisdiction; (2) he is, himself, the Attorney General of

Kansas and is denied his office space; (3) neither Steve A. Schwarm nor Daniel P. Kolditz, counsel for the State in the September 25 and October 25 hearings, nor Robert T. Stephan nor John W. Campbell, whose names appear as signers of the petition herein, are entitled to act in this case because they are not 'electors,' and because Mr. Stephan was not elected attorney general; (4) he states that he counterclaims and cross-claims; and (5) he wants a mandamus order against an unnamed judge.

"Addressing this group of asserted defenses in reverse order, no facts are stated which would support a mandamus order against any judge, were he identified—which he is not—and were any judges parties to this action—which none are.

"The counterclaim was dismissed at the October 25 hearing because he stated no facts to support a claim against the State. At the same hearing, the cross-claim was dismissed because Williams is the only respondent. Additionally, he stated no facts to support a claim against anyone.

"As to his assertions relating to attorneys in the attorney general's office, I take judicial notice of the records in the office of the clerk of this court and note that they are all licensed to practice law in this state. As to Mr. Stephan, individually, I take judicial notice of the records in the office of The Secretary of State and notice that he received the highest number of votes cast for the Office of Attorney General in the November 4, 1986, election for a 4-year term, which determination is supported by an Election Certificate issued by the State Board of Canvassers, together with judicial notice that the office of Clerk of the District Court of Shawnee County does not have any record of a contest of the election relative to the Office of Attorney General. I thus conclude that Mr. Stephan is attorney general.

"Turning now to Williams' claim to that office, the Kansas Constitution, Article 1, Section 1, and K.S.A. 25-702 speak of only one attorney general. If Mr. Stephan is attorney general, Mr. Williams is not.

"Next, as to jurisdiction of this court in a quo warranto case, I believe that Williams' progress in the Morris County case was not always smooth and at one point he countered a position being taken by the trial judge by claiming that the district court lacked jurisdiction of an issue because a quo warranto action [this action] had been filed in the Supreme Court of Kansas. However right or wrong that may have been, this court is granted original jurisdiction by Article 3, Section 3 of the Constitution of the State of Kansas and by K.S.A. 60-1202, a statute providing that quo warranto will lie when 'any person shall . . . claim any *franchise* within the state . . .' (Emphasis added.)

"As early as 1953, this court held that an original action in the nature of quo warranto may be commenced therein 'to determine if [individuals] have been exercising the *privilege and franchise* of practicing the learned profession of the law, and if so to oust and enjoin them therefrom.' (Emphasis added.) *State, ex rel. v. Schmitt*, 174 Kan. 581, 582, 258 P.2d 228 (1953). Since the word 'privilege' was, on the same page, twice conjoined with the

statutory word 'franchise,' it appears the joining was intended. *Schmitt* has not been overruled or modified. Jurisdiction exists.

"It follows that there is no merit in any of this group of claimed defenses, and it brings to mind a common legal phrase—common, at least, many years ago: 'This case just bristles with defenses.' To mind also comes the remembrance that the phrase was most often used when there were none.

   B. Neither the Kansas Constitution, statutory law, Supreme Court Rules
      nor court decisions provide a defense for Williams.

"Turning, for the moment, to whether he had defenses he failed to assert, the answer is negative.

"The Kansas Supreme Court 'has the inherent power to prescribe conditions for admission to the bar, and to define, supervise, regulate and control the practice of law' under Article 3, Section 1 of the Kansas Constitution. *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1036, 686 P.2d 171 (1984), citing *Martin v. Davis*, 187 Kan. 473, 357 P.2d 782 (1960). While there are statutes that relate to legal practice (see *e.g.* K.S.A. 7-126, codification of rules relating to admission of attorneys; and K.S.A. 7-104 relating to out-of-state attorneys), the body of Kansas law applicable here comes from our Rules or from court decisions.

"For examples, *State, ex rel. v. Hill*, 223 Kan. 425, 573 P.2d 1078 (1978), was a case relating to the broad scope of what acts may be considered as unauthorized practice of law.

"In *State ex rel. Stephan v. Adam*, 243 Kan. 619, 623, 760 P.2d 683 (1988), the Kansas prerequisites for practicing law are (save for out-of-state attorneys) set forth. The categories are:

   "The Supreme Court recognizes four categories of individuals who may appear in the courts of this State: (1) Members of the bar who have shown that they possess good moral character and a requisite general education and who have been examined by the Board of Law Examiners and issued their licenses to practice law; (2) individuals who have graduated from an accredited law school and have a temporary permit to practice law; (3) legal interns who are law students who are assigned to attorneys, agencies and public bodies who have requested their service and who agree to assign members of the bar to supervise and be responsible for the activities of the legal intern; and (4) non-lawyers, who may represent *only themselves*, and not others.' (Emphasis added.)

Williams does not fall within any category.

   C. KTAS provides nothing by way of defense for Williams' actions.

"The claim that Williams repeatedly makes here (and which he repeatedly made in the Morris County case) is that he is authorized to act as counsel in the courts by the KTAS Charter. It seems that he has a belief that the KTAS Charter is grandfathered into and supersedes the Constitution of Kansas, statutes, court rules, and court decisions. There are, however, many reasons that he is mistaken in his opinion.

"The simplest reason he is misguided is the language he relies upon is not in the Charter. He understands that KTAS provided that counselors

could perform their business either with, or without, a license. His mistake is that the provision is in the by-laws and not in the Charter. By-laws do not bind third parties such as the State of Kansas which did not assent to them. They bind only assenting members. *Radio Station KFH Co. v. Musicians Ass'n Local No. 297*, 169 Kan. 596, 602, 220 P.2d 199 (1950).

"KTAS was created by the Kansas Territorial Legislature by its Special Laws of 1855, Chapter 58, pages 834-36 as an aid to agriculture pursuits and was to have 'perpetual succession.' One legislature, however, cannot bind a later legislature. *Board of Education v. Phillips*, 67 Kan. 549, 552, 73 Pac. 97 (1903).

"In its same session, moreover, the territorial legislature passed General Laws of 1855, containing the provision in Section 1 of Chapter 11 that 'no person shall practice as an attorney or counsellor at law, or solicitor in chancery, in any court of record, unless he be a free white male, and obtain a license from the supreme court or district court, or someone of the judges thereof, in vacation.' Thus, the permissive by-law Williams relies upon was contrary to the law of the Territory of Kansas. Going a step further in time, except boundary laws, all acts passed before January 1, 1857, were repealed by the 1859 Territorial Legislature in its Territorial General Laws, Chapter 89, pages 544-46.

"In 1862, after Kansas was accepted into the Union, our state legislature created the State Agricultural Society whose scope of designated activity closely paralleled that of KTAS. As set out in *The State of Kansas ex rel. v. Studt*, 31 Kan. 245, 246, 1 Pac. 635 (1884), if it plainly shows that the new act was intended as a substitute for the first act, 'it will operate as a repeal of that act.' See *e.g. Howard v. Hulbert*, 63 Kan. 793, 66 Pac. 1041 (1901).

"If more is needed to show that the special act of the 1855 legislature was repealed, that is provided by Chapter 144 of our laws of 1923, which repealed statutes not referenced in the revised statute. The KTAS legislation was not referenced. This claim made by Williams, just as all of his other claims, has no merit.

"The State has proven Williams engaged in acts which constitute the unauthorized practice of law. I suggest that this court should issue its order enjoining Williams from any further unauthorized acts as requested by the State in its petition.

/s/ Frederick Woleslagel

Frederick Woleslagel
Supreme Court Commissioner."

We concur with and adopt Commissioner Woleslagel's findings of fact, conclusions of law, and recommendation to permanently enjoin the respondent from the unauthorized practice of law in Kansas. In doing so, we deem it advisable to comment briefly on the facts and issues in this case.

In determining what constitutes the "practice of law" no precise, all-encompassing definition is advisable, even if it were possible. Every matter asserting the unauthorized practice of law must be considered on its own facts on a case-by-case basis. In *State v. Schumacher*, 214 Kan. 1, 519 P.2d 1116 (1974), we stated:

"Although it may sometimes be articulated more simply, one definition [of "practice of law"] has gained widespread acceptance, and has been adopted by this Court:

"A general definition of the term frequently quoted with approval is given in *Eley v. Miller*, 7 Ind. App. 529, 34 N.E. 836, as follows:

'As the term is generally understood, the practice of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' *State, ex rel., v. Perkins*, 138 Kan. 899, 907, 908, 28 P.2d 765 (1934).

The court, in *Perkins*, also pointed out that '[o]ne who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law.' 138 Kan. at 908. The quotation from the *Eley* case has been adopted as the general rule in 7 C.J.S., *Attorney and Client*, § 3g (1937).

"A more recent source defines the practice of law as 'the rendition of services requiring the knowledge and application of legal principles and technique to serve the interests of another with his consent.' *R.J. Edwards, Inc. v. Hert*, 504 P.2d 407, 416 (Okla., 1972).

"It is clearly the prerogative of the Supreme Court to define the practices of law:

It is unnecessary here to explore the limits of judicial power conferred by [Article 3, Sec. 1, of the Kansas Constitution], but suffice it to say that the practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to regulate the practice naturally and logically belongs to the judicial department of the government. (*In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151.) Included in that power is the supreme court's inherent right to prescribe conditions for admission to the Bar, to define, supervise, regulate and control the practice of law, whether in or out of court, and this is so notwithstanding acts of the legislature in the exercise of its police power to protect the public interest and welfare. (*Martin v. Davis*, 187 Kan. 473, 478-79, 357 P.2d 782 (1960.)

See, *In re Hanson*, 134 Kan. 165, 170, 5 P.2d 1088 (1931); *State v. Rose*, 74 Kan. 260, 85 Pac. 803 (1906); and *State v. Blase*, 208 Kan. 969, 494 P.2d 1224 (1972)." 214 Kan. at 9-10.

In *State, ex rel., v. Perkins*, 138 Kan. 899, 28 P.2d 765 (1934), the attorney general filed an original action in quo warranto to enjoin the defendant from the unauthorized practice of law in Kansas. We held:

"This court has constitutional, statutory and inherent jurisdiction to inquire by what authority one assumes to practice law in this state and to make appropriate orders relating thereto. A proceeding in the nature of quo warranto by the state on the relation of the attorney-general is appropriate for that purpose." Syl. ¶ 2.

"In the interpretation of the laws and the administration of justice it is essential that there be members of the bar of ability, adequate learning and sound moral character. One of the important functions of this court is to admit only such persons to the practice of law, to suspend or expel those found unworthy, and to prevent the practice of law by unauthorized persons." Syl. ¶ 3.

In the instant case, the respondent does not deny that he has signed pleadings in various lawsuits in the district courts of this state, that he has assisted others in preparing pleadings, that he has appeared on behalf of others at hearings in court, that he has examined witnesses, and that he has attempted to perform the services of an attorney. His explanation of his actions is that he is authorized to act as an attorney by the KTAS.

Whatever else may be said about the present status of the Kansas Territorial Agricultural Society, it is not a corporation or entity established by statute. We agree with Commissioner Woleslagel that whatever status was given the KTAS by the 1855 Territorial Statutes has long since been abolished by subsequent acts of the legislatures of the Territory of Kansas and the State of Kansas. The KTAS is not incorporated under the laws of the State of Kansas and has no legal existence as a corporate entity. At best, the KTAS, if it exists at all, is a voluntary unincorporated association of individuals without separate legal status. In any event, it can only be represented in Kansas courts by a duly licensed attorney admitted to the practice of law in Kansas by order of this court.

In *Clean Air Transport Systems v. San Mateo County Transit Dist.*, 198 Cal. App. 3d 576, 243 Cal. Rptr. 799 (1988), the

California court reasoned that "an unincorporated association resembles a corporation more than it does an individual" and thus the rule that a corporation cannot appear in court without a licensed attorney applies to unincorporated associations. 198 Cal. App. 3d at 578-79.

In *State v. Settle*, 129 N.H. 171, 523 A.2d 124 (1987), the New Hampshire court determined that a statute authorizing a party to appear "in his proper person" refers to self-representation and does not permit an individual to represent an incorporated or unincorporated association. 129 N.H. at 176. The court also referred to "centuries of historical precedent" and the "overwhelming weight of authority to this day" establishing that a corporation must be represented by an attorney and determined that the same rules apply to unincorporated associations. 129 N.H. at 176-77. See also *James D. Pauls, Ltd., v. Pauls*, 633 F. Supp. 34 (S.D. Fla. 1986), where the court held that the general partner of three limited partnerships, who was not an attorney, could not represent the partnerships.

The KTAS does not now have, and never has had, the power to authorize a nonattorney to practice law in Kansas. The authority to admit a person to the bar of Kansas and to authorize the practice of law in Kansas is vested solely in the Kansas Supreme Court.

While respondent may appear in court on his own behalf when he is a named party to pending litigation, he has no right, franchise, or authority to appear for or on behalf of any other person or entity. Nor does he have the right to give legal advice to any other person or entity not admitted to the practice of law, or to assist any such person or entity in any matter requiring legal knowledge and training. While we do not doubt the respondent's sincerity in his beliefs, we cannot condone his actions in asserting his totally unfounded claims that he is authorized to practice law and that he is the Attorney General of Kansas.

The beliefs, allegations, and actions of the respondent might be considered inconsequential, or even comical, if not so serious in their results. Respondent has not only delayed and hindered the courts of this state in their efforts to properly administer the laws and conduct legal proceedings, he has also taken it upon himself to counsel and advise innocent citizens as to their legal

rights with absolutely no understanding, training, or knowledge in the law or legal principles pertaining to their problems. Individuals and other entities, including the KTAS, may have been irreparably damaged by the loss of legal rights which might have otherwise been preserved except for reliance upon the legal advice and attempted legal representation of Williams. It is for these very reasons that the Supreme Court of Kansas and the courts of every state in the United States require every person who seeks to practice law to obtain proper training and education. We conclude that Williams has been actively engaged in the unauthorized practice of law and that the relief sought by the State of Kansas should be granted.

In closing, we wish to commend Commissioner Woleslagel for his patient, understanding, and professional handling of an extremely difficult task. He has gone to every extreme to assure that the respondent received all the safeguards of due process of law and has extended to respondent every opportunity and leeway to present evidence and propound his views under the most trying and frustrating circumstances.

One final matter remains. The respondent, in direct violation of prior orders of the Commissioner, prepared, signed, and filed frivolous pleadings, and the State has asked that we impose monetary sanctions against the respondent pursuant to K.S.A. 1989 Supp. 60-211. The Attorney General asserts that he and his staff were required to expend numerous hours in preparing a response to such pleadings and asks that the State of Kansas be reimbursed for such expense and time. While we are of the opinion that the imposition of sanctions in this case would certainly be justified, we decline to do so at this time due to our belief that Williams' actions, while totally frivolous and contrary to law, were sincerely pursued by Williams through ignorance and misunderstanding of the laws of Kansas.

IT IS THEREFORE ORDERED that Franklin Dee Williams be and he is hereby permanently enjoined from the unauthorized practice of law in the State of Kansas including, but not limited to, the unauthorized practice of law in any and all judicial districts and courts in the State of Kansas; appearing in any representative capacity, counseling capacity, or other similar role to assist non-

members of the bar of the State of Kansas in the presentation of any matters in the courts of the State of Kansas; preparing or filing in any district or appellate court in this state, for or on behalf of another, any pleading or document; appearing for or representing another in any manner in any action or proceeding pending in any district or appellate court in this state; and counseling or advising any nonmember of the bar of the State of Kansas on any legal matter whatsoever.

IT IS FURTHER ORDERED that the respondent, Franklin Dee Williams, shall forthwith pay the costs of this action to the Clerk of the Appellate Courts.

IT IS FURTHER ORDERED that any violations of the orders of this court by Franklin Dee Williams shall constitute contempt of court and shall subject Franklin Dee Williams to the sanctions provided by law, and such sanctions may be imposed by any court in which such violations occur.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts and the clerks of the district courts of the State of Kansas shall refuse to receive and file any pleadings signed or prepared by Franklin Dee Williams in any proceedings except when he is a named party and the pleading or document is submitted solely on his own behalf.